𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

SMITH v. STANLEY.

September 9, 1912.

Absent, Cardwell, J.

1.. APPEAL AND ERROR—*Change of Position—Ejectment—Common Source of Title.*—Where both parties to an action of ejectment proceed with the case in the trial court upon the theory that it is a case of common source of title, the defendant will not be permitted, on a writ of error awarded the plaintiff, to deny that it was a case of "common source."

2. EVIDENCE—*Boundaries—Location.*—After a surveyor has testified, in an action of ejectment, how he had located a part of a disputed line, he cannot be asked if there was any other rule of surveying in locating such a line than that adopted by him as the proper location of the line was a question for the jury upon all the evidence in the case.

3. WITNESSES — *Cross Examination — Extent — Discretion of Trial Court—Objections to Evidence.*—Generally, if a party wishes to cross-examine a witness upon matters not brought out on his examination in chief, he should do so by making the witness his own and calling him as such during the progress of the case, but even if this rule be violated it is not ground for reversal unless the trial court has abused its discretion in the matter. If the objection to evidence is as to the time it is offered, the objection should so state.

4. EVIDENCE—*Boundaries—Declarations of Third Person—Admissibility.*—The declarations of a person as to the location of a disputed boundary line may not be given in evidence in a controversy between others, to whom he was an entire stranger, where it does not appear that he was a surveyor or chain carrier at the making of the original survey, or that he was the owner of the tract, or of any adjoining tract calling for the same boundaries, or has been a processioner of the land, or that his situation was such in reference to the land as to render it his duty or his interest to make diligent enquiry and obtain accurate information as to the facts, or that he had any peculiar

Syllabus.

means of knowledge as to such boundary line, but was simply
living on the land at the time the declaration was made.

5. EVIDENCE—*Expert Testimony—Opinion.*—Whether a given piece of
land is such as would be included in a survey of a farm by a
man who did not wish to pay taxes on any more land than
he could farm is not the subject of expert evidence, and can-
not be shown by the opinion of a witness.

6. EVIDENCE—*Surveyors—Opinions—Age of Marks on Trees.*—Survey-
ors may give their opinions as to the age of the marks on
timber, but not on other matters not calling for expert testimony.

7. EVIDENCE—*Boundaries—Admissions of Former Owner—Opinions.*—
Testimony as to an admission made by a predecessor in title
tending to show that he did not claim the lines in controversy
where his vendee now claims them is admissible, but the wit-
ness may not give his opinion as to whether such predecessor
in title would or would not have sold the land in dispute.

8. EVIDENCE—*Boundaries—Claim of Former Owner—Acquiescence—
Adverse Possession.*—Evidence tending to show that the prede-
cessor in title of the defendant in ejectment claimed the land
now in controversy, exercised acts of ownership over the same,
or portions thereof, by cutting, using and selling timber from
it, clearing and cultivating portions of it, with the knowledge
of and without objection on the part of the predecessor in title
of the plaintiff, is clearly competent as tending to show where
the predecessors in title of both the plaintiff and the defendant
regarded the line between them, and also as tending to show
adversary possession on the part of the predecessor in title of
the defendant, and those who claim under him, even though the
acts mentioned were not sufficient to show title by adversary
possession.

9. APPEAL AND ERROR—*Leading Questions to Witness.*—Ordinarily, per-
mitting a leading question to be asked is no ground for re-
versal.

10. BOUNDARIES—*Admissions of Former Owner—Deeds.*—In a contro-
versy about a disputed boundary line, a deed of trust made by a
former owner, giving what he recognized as the true location
of the disputed line, is admissible in evidence against those
claiming under him.

11. EVIDENCE—*Attested Document—Proof of Execution.*—Where the
maker and attesting witness to a paper are both dead, and it
appears that the maker signed by making his mark, proof that
the signature of the attesting witness and also the name of the
maker is in the handwriting of the attesting witness, is suffi-
cient proof of the execution of the paper.

12. EVIDENCE—*Admissions—Letters—Admissibility.*—Letters not written by or to a defendant in ejectment, nor by or to anyone under whom he claims, are not admissible in evidence against him. The facts stated therein, if material and relied on by the plaintiff, must be proved orally or by depositions.

13. INSTRUCTIONS—*Jury Fully Instructed.*—If, when considered as a whole, the instructions given in a case fairly submit it to the jury, it is not error to refuse to give other instructions, even though they correctly state the law applicable to the case.

14. INSTRUCTIONS—*Advising Jury to Agree—Concessions.*—It is proper in any case, but especially appropriate in a case where two previous juries have been unable to agree, for the court to instruct the jury "that it is the duty of juries to agree if they can, that it is the duty of a juror or jurors not to hold out and be positive against the other jurors on controverted questions, unless he is convinced that he is right, but such juror or jurors should make concessions and try to agree with the others if he can possibly do so without violating his oath or his conscience."

15. EJECTMENT — *Disputed Boundary — Line Agreed — Possession.—Instructions.*—Upon the facts of the case at bar, which was an action of ejectment between adjacent owners, it was not error to instruct the jury that if a man is living upon his land, or any part thereof, claiming to the extent of his boundary, and no part of it is in the possession of any one else, his possession extends to the boundaries called for in his deed, and if the jury believe, from the evidence, that there was an express agreement between former adjacent owners, and they exercised acts of ownership up to the agreed line for a considerable length of time this is sufficient to establish the line between the parties, but if there was no express agreement between them, and neither knew the exact location of the division line, yet if they claimed up to a certain line on each side and exercised acts of ownership up to that line, the jury have a right to conclude that there was a line established by the parties.

Error to a judgment of the Circuit Court of Dickenson county in an action of ejectment. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Skeen & Skeen* and *Sutherland & Sutherland,* for the plaintiff in error.

*Vicars & Peery* and *W. H. Rouse,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action of ejectment, brought by the plaintiff in error against the defendant in error, to recover a small parcel of land.

The rights of the parties depend upon the location of a disputed boundary line. Both parties claim under conveyances from George A. Warder. In February, 1888, Warder conveyed to Rainwater Ramsey a tract of land containing, as stated in the deed, about 250 acres, known as the "William Hale" land, and upon which Ramsey had resided since about the year 1868. The defendant acquired Ramsey's interest in the land sued for. In April, 1888, Warder conveyed two contiguous parcels of land to William Green, one known as the "Elias Green tract" and the other known as the "Aaron Wright tract." Along the controverted lines the deed to William Green calls for corners and lines on the William Hale (Ramsey) land, theretofore conveyed. The plaintiff claims under William Green.

There was a verdict and judgment in favor of the defendant in the trial court, and to that judgment this writ of error was awarded.

The plaintiff took eighteen bills of exception to the action of the court upon the admission and rejection of evidence; and offered twenty-seven instructions, two of which were given as offered, four amended, and as amended, given, and the others refused. The plaintiff excepted to the action of the court in refusing and amending

his instructions, and also to its action in giving seven instructions asked for by the defendant, to one given orally by the court, in answer to a question asked by one of the jurors, and to the refusal of the court to set aside the verdict.

The record is voluminous, much of the evidence parol and more or less conflicting. If the case was properly submitted to the jury, it is clear that the court did not err in refusing to set aside the verdict.

The plaintiff did not trace title to the Commonwealth, and the defendant insists that, unless it appears that both parties derived title from a common source, it will be unnecessary to consider any other question in the case. It is conceded that both parties claim under a common grantor, George A. Warder, but the defendant denies that the conveyance of two distinct parcels of land, one to one grantee and the other to another grantee, although the deed to the junior grantee calls for the lines of the senior grantee, shows that the parties derived title from a "common source," within the meaning of that term.

Whatever may be the merits of that contention, we do not think it can be raised in this court. In the trial court both parties proceeded upon the theory that it was a case of common source of title. By the defendant's instruction No. 2 it is conceded that if the plaintiff traced his title back to Warder and showed a present right of possession to the land sued for, he had made out a *prima facie* case. This, of course, could not be true unless Warder was regarded as the common source of title.

Thacker, a surveyor, who has surveyed the lands claimed by the plaintiff and made a plat thereof, which was in evidence, after testifying how he had located a part of the disputed line, was asked if there was any other rule of surveying in locating such a line than that adopted by him. The witness was not permitted to answer the question, and this action of the court is assigned as error.

Whether or not the line in question was properly located was a question for the jury, upon all the evidence in the case. Upon the facts stated in the bill of exceptions (No. 3), the ruling of the court was proper.

The same witness, and John Green, Brownlow Green and Samuel Green were asked certain questions upon cross-examination by the defendant's counsel as to matters not connected, it is claimed, with their examination in chief. The action of the court in permitting such questions to be asked at that time is assigned as error.

The bills of exceptions, upon which this assignment of error is based, show that the said questions were objected to generally, but do not show upon what ground. The general rule, unquestionably, is that if the party cross-examining wishes to examine a witness as to matters other than those stated in his examination in chief, he should do so by making the witness his own, and calling him as such in the progress of the cause. 1 Greenleaf, sec. 445. But where the objection to the evidence is as to the time it is offered, the objection should so state. But even if that be done, the manner of examining witnesses is so largely in the discretion of the trial court that its action will not be reversed unless it has abused its discretion. 1 Greenleaf on Ev., sec. 431, 447; 2 Elliott on Ev., sec. 927.

The refusal of the court to permit A. W. Hale, a son of William Hale, to testify as to what the witness had heard his brother say with reference to where the line in controversy was located is assigned as error.

It does not appear that the person whose statement was sought to be proved was either a surveyor or chain-carrier at the making of the original survey, or that he was the owner of the tract or of any adjoining tract calling for the same boundaries. It does not appear that he had been engaged as a processioner of the land, or that his situation was such in reference to the land as to render it his

duty, or his interest, to make diligent inquiry and obtain accurate information as to the facts. It appears that he was living on the land at the time, but in what character is not stated. It is not stated that he was there as the tenant of William Hale, or as a claimant for himself under any title; certainly it does not appear that he had that peculiar means of knowing the facts which would impress upon his unsworn statement the character of evidence in a subsequent controversy between others, to whom he was entirely a stranger, about the title to the land. His statement, under our decisions, was properly rejected. *Harriman* v. *Brown,* 8 Leigh (35 Va.) 697, 712-13; *Clements* v. *Kyle,* 13 Gratt. (54 Va.) 468, 478; *Fry* v. *Stowers,* 92 Va. 13, 14, 22 S. E. 500.

There was evidence tending to prove that William Hale, a former owner, had said that when he had his claim surveyed he did not survey all of it, but only had the "heads of the bottoms run out," as he did not wish to pay taxes on more land than he could farm. E. D. Sutherland, after stating that the land was hilly and rocky, was not permitted to answer whether it was "such land as a man running out the heads of bottoms for him a farm—a man who did not want to pay taxes on more land than he could farm—would include in his survey?" This action of the court is assigned as error.

The answer sought was the opinion of the witness upon a matter which was clearly not the subject of expert evidence.

The action of the court in permitting certain questions to be answered by Mrs. Margaret Hale, as set out in bill of exceptions numbered 9, is assigned as error. When that bill of exceptions is considered in connection with bill of exceptions numbered 1, we do not think the court erred in permitting the evidence objected to, which it is true was somewhat indefinite, to go to the jury for what it was worth.

The court, as appears from bill of exceptions No. 10, refused to permit a surveyor named Raines, on cross-examination, to answer certain questions therein set out. The answers called for by the questions were the opinions of the witness. In passing upon the objection to that evidence and upon the motion of the defendant to exclude other evidence of like kind which had gone to the jury, the court sustained the objection and excluded all the opinion evidence of the surveyors who had testified in the cause, except their opinions as to the age of the marks on timber. The ruling of the court in excluding said evidence and the language in which its ruling was made is assigned as error.

While the language of the court is somewhat involved, it is clear, we think, that the jury must have understood from it that all the opinion evidence of the surveyors, except as to the age of the marks on timber, was excluded and must not be considered by them in arriving at their verdict. Neither do we think that the court erred in excluding the evidence objected to and asked to be excluded.

The action of the court in permitting E. T. Sutherland to testify as to an admission made by Wm. Green (through whom the plaintiff claims) as set out in bill of exceptions No. 11, and the refusal of the court to permit the same witness, upon cross-examination, to answer a question as to the habits of Wm. Green, as appears from the same bill of exceptions, are assigned as errors.

The question which the witness was permitted to answer tended to show that Wm. Green did not claim the lines in controversy where the defendant, his vendee, now claims them. The question which the court declined to permit the witness to answer sought the opinion of the witness as to whether Wm. Green would or would not have sold land in dispute. The ruling of the court upon each question was clearly proper.

The court, as will appear from bills of exceptions numbered 12, 13, 14, 16 and 19, refused to exclude evidence tending to show that Rainwater Ramsey claimed the land now in controversy, and that he and those who claim under him, exercised acts of ownership over the same, or portions thereof, by cutting, using and selling timber from it, clearing and cultivating portions of it, with the knowledge of and without objection on the part of Wm. Green.

This evidence was clearly competent as tending to show where both Ramsey and Green regarded the line between them and also as tending to show adversary possession on the part of Ramsey and those who claim under him—even if the acts mentioned were not sufficient, as claimed by the plaintiff, to show title by adversary possession.

The court permitted Reedy, a witness, who had testified to a conversation between himself and Wm. Green (bill of exceptions No. 15) to be asked the following question: "He (Green) was then talking about the division line between him and Ramsey?" and his reply was, "Yes, sir." This question was objected to because leading, and because the statement of Green was made under a mistake.

Ordinarily, permitting a leading question to be asked furnishes no ground for reversal—certainly not in this case, for it appears from what the witness had already stated that Green was talking about the division line. Whether his admission as to the location of that line was made under a mistake was a question for the jury, not for the court.

The assignment of error based upon bill of exceptions No. 17 is to the action of the court in permitting the defendant to introduce in evidence a deed from Wm. Green to Willard, trustee. The deed shows upon its face that the land embraced in it is a portion of the two tracts of land owned by Wm. Green, as hereinbefore stated. There

was evidence in the case tending to show that Wm. Green recognized and treated the southern boundary line of his land as correctly described in the Willard deed, and that the said southern boundary line was the Hale line, or a line treated by him (Green) and Ramsey as the true division line between them. If the line called for in the Willard deed was the boundary line between the lands of Ramsey and Green, then the land in controversy belonged to the Ramsey tract and the plaintiff could not recover it. The Willard deed, in this view of the case, was material evidence and the court did not err in admitting it.

The defendant was permitted to introduce in evidence a notation or endorsement on the margin of the deed from Warder to Wm. Green. The objection made to the introduction of said endorsement, as stated in substance in bill of exceptions No. 18, was that it was not proved to have been the act of Wm. Green. It was signed "Wm. x Green," and witnessed by J. F. Gilliam. J. F. Gilliam was dead. Three witnesses were placed upon the stand to testify to his handwriting, with which they stated they were familiar. All of them were of opinion that the name of the subscribing witness was in his own handwriting, and two of them thought that the words "Wm. x Green" were also in his handwriting. This was sufficient proof of the execution of the endorsement to render it admissible.

Under the facts disclosed by bill of exceptions No. 20, we do not think that the court erred in refusing to permit the papers therein set out to go to the jury. The letters excluded were not written by or to the defendant, nor by or to anyone under whom he claimed. Their contents, if relied on to show that the plaintiff was not withholding

from the jury the title bond to the Green land, ought to have been proved orally or by deposition.

The court gave the following instructions:

### DEFENDANT'S INSTRUCTIONS.

"1. The court instructs the jury that the plaintiff can recover in this action only on the strength of his own title. That it does not matter whether the title of the defendants is defective or not, the question is not whether the defendants have title to the land in this suit mentioned, but whether the plaintiff has title thereto.

"2. The court instructs the jury that the plaintiff must show the Warder title in himself and a present right of possession at the time of the commencement of this action before the defendants are called upon to show anything, and the party in possession is presumed to be the owner until the contrary is proved.

"3. The court instructs the jury that the burden is on the plaintiff in this case to prove that the deed from George A. Warder to Rainwater Ramsey offered in evidence by the plaintiff in this case does not include the land in controversy; and, unless they do believe by a preponderance of the evidence in this case that the land in controversy is not included in said deed from George A. Warder to Rainwater Ramsey, they must find for the defendant.

"4. The court instructs the jury that as a matter of law the use and occupancy of contiguous property by the respective owners thereof without disturbance for a sufficient length of time to show that the owners thereof knew their boundary lines, will be sufficient evidence of an agreement between the parties to establish such line as the true boundary line between the parties, and if they take and hold possession up to that line the requisite statutory

period, for at least ten years, the possession thereof will ripen into title and will preclude the parties and those holding under them from thereafter disputing the same.

"5. The court further instructs the jury that in an action of ejectment a defendant who is in the peaceable possession of land sought to be recovered is entitled to hold the same against all the world except the true owner thereof.

"6. The court instructs the jury that where the boundaries are doubtful actual occupation for a number of years up to the line whence the party supposed his land to extend, without objection from the adjoining proprietor, is strong presumptive evidence of the true place of the line.

"7. The court instructs the jury that if in this case they believe that Rainwater Ramsey and those claiming under him were in possession for a number of years up to the northern line of the land in controversy to which they supposed their land to extend, without objection from William Green and those claiming under him, then that is strong presumptive evidence of the true location of the division line between the lands of Ramsey and Green."

### PLAINTIFF'S INSTRUCTIONS.

3. (As amended.) "Where corner trees are called for, but not found, nor the place at which they stood located, then the lines running to and from such corner should be determined by the courses and distances called for in the deed, provided such courses and distances will run to the next located corner; and

"4th. If such course and distance will not run to the next located corner, then distance must give way to course, or course to distance, according to the manifest intent of the parties and the circumstances of the case.

"4. The court further instructs the jury that if they

believe from the evidence that Warder, the common grantor, under which both complainant and defendant claims, conveyed to Rainwater Ramsey by deed the lands on the south side of the Billy Hale line, and that he subsequently conveyed to William Green the adjacent lands on the northern side of said Hale line, then in order to determine in whom the title to the land in controversy is now vested, it is necessary for you to determine by a preponderance of the evidence the true location of the original William Hale line called for in the title papers of both complainant and defendant, and if you believe by a preponderance of the evidence that the land in controversy is located on the north side of the William Hale line, and that same was conveyed to Green by Warders and not previously conveyed by Warders to Ramsey, then you should find for the plaintiff."

Amendment to 4. "Unless you believe by a preponderance of the evidence that after a dispute or controversy arose between Ramsey and Green, the adjacent owners, as to the true location of the Hale line, they mutually agreed upon a location of the Hale line, and that in pursuance of said agreement each of the said adjacent owners, namely, Green and Ramsey, took possession, used and occupied said land up to said agreed line for the statutory period of ten years."

"5. The court further tells the jury that if they believe from the evidence that William Green did not know during his lifetime where the Billy Hale line was located, but that he continued to claim title up to the said Billy Hale line, then he and those claiming under him are not estopped from now showing the true location of the said Billy Hale line and may claim up to said line wherever it may be actually located.

Amendment to 5. "Unless you further believe the parties did agree upon another line and each held possession up

to said agreed line for a period of ten years prior to the bringing of this suit.

"7. The court further tells the jury that cutting timber is not sufficient act of ownership to amount to a disseizen or dispossession of the rightful owner, neither is a disclaimer of title by the true owner sufficient to divest himself of the legal title or defeat this action.

"10. The court tells the jury that the law is that a disclaimer sufficient to divest an owner of title to lands can only be made by deed or in a court of record. In the case of disputed boundaries, the parties may agree upon a line, by way of compromise, and if they take and hold possession up to that line for the requisite statutory period, the mere possession will in time ripen to title.

"11. The court tells the jury that fixed monuments, natural boundaries and the topography of the country control over course and distance in locating the boundary of a deed."

The action of the court in giving these instructions, except No. 7 and No. 11 offered by the plaintiff, is assigned as error, as is also the action of the court in refusing to give twenty-five other instructions as offered by the plaintiff.

Without attempting any detailed discussion of the numerous objections to the instructions given and to the action of the court in refusing to give those which were rejected, it is sufficient to say that, while some of the instructions given are not as full and as clear as it is desirable that instructions should be, yet when considered as a whole, as they must be, we think they fairly submitted the case to the jury. This being so, the court did not err in refusing to give the other instructions offered, even if they had stated, as many of them fail to do, correct propositions of law as applied to the facts of this case.

The case was submitted to the jury on Saturday, and

being unable to agree upon a verdict, they were adjourned over until Monday.

Before retiring to their room on Monday to consider of their verdict, the court said to the jury: "Gentlemen, the court had thought he would sum up the evidence in this case, but after deliberation I have decided not to do so, but I will say that it is the duty of juries to agree if they can, that it is the duty of a juror or jurors not to hold out and be positive against the other jurors on controverted questions, unless he is convinced that he is right. But such juror or jurors should make concessions and try to agree with the others if he can possibly do so without violating his oath or his conscience."

This action of the court is assigned as error.

Not only was there no error in the court's direction to the jury as to their duty as jurors, but such direction was especially appropriate in this case, in which there had already been two mistrials because of the inability of the jurors to agree.

Before agreeing upon their verdict, the jury returned to the court room, when one of them asked the court, "what possession would be sufficient for the jury to believe or find that the defendant was entitled to the land." The court orally replied: "That if a man living upon his lands, or any part thereof, and claiming to the extent of his boundary and no part of it in the possession of any one else, his possession extended to the boundaries called for in his deed, and in this case if you believe from the evidence there was an express agreement between Ramsey and Green and the parties exercised acts of ownership up to this agreed line for a considerable period of time, this is sufficient to establish the line between the parties. If you believe there was an agreed line established by the parties as claimed by the defendant, and if you further believe there was no express agreement between the parties

and neither party knew the exact location of the division line, yet if the parties, Ramsey and Green, claimed up to a certain line on each side and exercised ownership, cut the timber up to that line and sold their lands up to that line, you have a right to come to the conclusion that there was a line established by the parties."

This action of the court is assigned as error, first, because the court's statement was not a reply to the juror's question, and, second, because it does not state the law correctly.

The court is of opinion that the statement of the court was an answer to the juror's question, and as applied to the facts of this case was substantially a correct statement of law.

Upon the whole case we are of opinion that the judgment of the circuit court should be affirmed.

*Affirmed.*