TOMMY LENNOX, *An Infant, Who Sues*

*By* JOS. T. ROSE, *His Next Friend*

*v.*

BERNARD H. WHITE, JR., *Et Al., Executors, Etc.*

(No. 10094)

Submitted April 20, 1949. Decided June 14, 1949.

2

Fox, Judge, concurring.

*Rummell, Blagg & Stone,* for plaintiffs in error.

*Kay, Casto & Amos, Vincent V. Chaney, John S. Haight,* for defendants in error.

Kenna, Judge:

This action of trespass on the case was brought in the Circuit Court of Kanawha County on behalf of Tommy Lennox, a five year old infant, by Joseph T. Rose, as his next friend, against Bernard H. White. In addition to acting as next friend, Rose is the stepfather of the infant plaintiff, with whom he lived in one of two ground floor, single file, four room apartments then owned by Bernard H. White and managed by Pritchard & Skidmore, Inc., as the landlord's real estate agent. The alleged cause of action arose from the fact that on the late afternoon of November 26, 1945, Tommy Lennox fell astraddle a floor joist in the only bathroom on the ground floor of the four apartment, two story building, a hole in the floor on one side of the joist having been due to bad construction and a hole on the other side of the same joist caused by decay of a floor board. The resultant injury was the loss of one testicle accompanied by considerable pain, suffering and sickness and the doubtful enjoyment of full manhood which can only be determined after the age of puberty. Bernard H. White died *pendente lite* and the action was revived as

against his executors. The final judgment was based upon a verdict for $7,500.00 in favor of the plaintiff.

The assignment of error briefed and submitted are: (1) That there was no duty upon the landlord to keep the bathroom in repair; (2) that the verdict is contrary to the evidence; (3) that it was error to permit the amendment of the declaration to contradict the bill of particulars; (4) that the court erred in instructing the jury orally after it had reported its inability to agree; and (5) that the verdict was excessive.

Dealing with the first assignment, it is a settled principle in this jurisdiction that a landlord as such is not responsible for keeping the leased premises in repair. In this instance, however, Rose's lease was written and the bathroom was not a part of the premises leased to him. It was open to his use and also to the use of the other ground floor tenant, not subject to the exclusive use of either. It was situate mainly at the rear of the other apartment, partly of the one occupied by Rose. There was no direct entrance from a room in either apartment, but there were two doors to the bathroom, one facing the back porch of each apartment, so that the only way into the bath was by way of a back porch. The plaintiff seeks recovery not by virtue of a contractual responsibility of the landlord for the condition of leased premises, but by reason of his responsibility for the condition of that part of the premises not under direct lease, but used in common by the tenants with the knowledge and acquiescence of the landlord resulting in his responsibility under what is known in this jurisdiction as the "common use" principle. In *Marsh v. Riley,* 118 W. Va. 52, 188 S. E. 748, this Court refused to set aside a verdict on the theory that the landlord was not responsible for maintaining in a reasonably safe condition a bathroom used in common by his tenants. The trial court's order setting aside the verdict for another reason was affirmed, but this court held that a landlord is responsible for ordinary care in maintaining in a reasonably safe condition that part of

the premises in common use by his tenants. The plaintiffs in error insist that under the "common use" principle no liability attaches upon the landlord here because the bathroom in question was jointly used by only two tenants and no general common use was permitted. It is to be remembered that there were but two apartments on the ground floor and two apartments on the second floor of a four apartment building. Certainly the tenants on the second floor could not under any reasonable rule be expected to make use of facilities on the first floor to which their apartments did not extend. All of the occupants on the first floor used this bathroom. True, there were only two tenants, but since there were no others to be served within a reasonable range of service, we hold that that bathroom, not being under lease, was brought within the common use principle by the facts and circumstances shown of record.

The second assignment of error rests primarily upon a statement made by Tommy Lennox the day after he was injured to the effect that his stepfather was responsible for his injury because he had placed Tommy in the hole where Mrs. Cochran found him. This Rose did not deny when on the stand, subject to the jury's scrutiny. Tommy Lennox did not testify. He was a rather delicate boy five years of age. He had been very severely injured. On the morning the statement was made he was carrying a temperature of 103 degrees. These are circumstances to be considered in connection with the extreme unlikelihood of the occurrence itself. In our opinion this evidence involved a jury question and did not overcome the weight of the testimony in the plaintiff's favor.

In our opinion the amendment to the declaration did not contradict the bill of particulars. As originally drafted the declaration described an injury to the plaintiff's groin. When Rose was on the stand in the course of his examination in chief he was asked a question which related directly to the plaintiff's loss of a testicle by reason of his injury. To this the defendants objected as relating to an injury

not complained of in the declaration. In this connection the defendants called the trial court's attention to the fact that the plaintiff had never complied with the defendants' demand for a bill of particulars, then brought to the court's attention for the first time. It appeared from the uncontradicted statement or plaintiff's counsel that counsel for the defendants at the time of their request for a bill of particulars had been supplied with the report of Dr. Thomas G. Reed and full disclosure of all of the medical evidence then at the disposal of the plaintiff. The amendment alleging the loss of a testicle was permitted over the objection of the defendants who contended that the medical report negatives the idea that in the-opinion of the physician making it the plaintiff had suffered a permanent injury, and that permitting the declaration to be amended, resting his recovery upon the loss of a testicle and injury of a permanent nature, took the defendants by surprise. We are of the opinion that this contention is untenable. The defendants never pressed their demand for a bill of particulars. There was no formal response. Dr. Reed's report was furnished informally and certainly included injury to the left testicle. The extent and permanence of the injury at that particular time was probably a question of professional opinion. It could hardly have been intended as the statement of an absolute fact. We are inclined to believe that if this assignment rested upon information furnished the defendants in formal compliance with the request for a bill of particulars, we would hold that even accompanied by a motion for a continuance the objection to the amendment is not well taken because based upon opinions which the defendants might either verify or attack as they saw fit.

The fourth assignment of error in our opinion is well taken. The case was submitted to the jury on the afternoon of the fourth day. It retired and at the adjourning hour the foreman reported that they had not yet agreed upon a verdict and requested that the transcript of Dr. Ketchum's testimony be read to them. Thereupon the court adjourned and upon reconvening at nine-thirty the

following morning the court ordered the reporter to read Dr. Ketchum's testimony. To this there was no objection. After that was done the court inquired how the jury was divided numerically and was informed by the foreman that it stood eleven to one, not stating in whose favor. Following that the court told the jury that it was not his purpose nor intention to coerce them in arriving at a verdict but that he did feel it his duty to instruct them that it was their duty to "compromise your differences if humanly possible." At another point in the statement the court said this: "Gentlemen, you are under the highest duty, whatever your differences as between the one and the eleven, to find out what that is and if humanly possible and consistent with right and justice to compose your differences and arrive at a verdict." Of course the numerical differences in the vote of a jury do not influence in any way rules governing the proper functioning of the same jury. The trial judge addressed himself to "differences as between the one and the eleven", thus making his admonition much more emphatic concerning the one than it was concerning the eleven. This jury had taken at least one ballot and supposedly had then expressed themselves "consistent with right and justice" and had attempted to arrive at a verdict. The court's admonitions seemed to assume that one or more had not comprehended fully the duty of a juror. We do not believe that the cases cited by defendant in error are persuasive under the circumstances before us. They all involve the single circumstance of a court having urged a jury to reach a decision. Here we have the court's inquiry and the jury's report that they stood eleven to one, followed by the court's admonition that they were under the highest duty to arrive at a verdict if humanly possible consistent with right and justice. There does not appear to have been a report on the numerical standing of the jury in *Smith v. Stanley,* 114 Va. 117, 75 S. E. 742, nor are we cited to a case that combines the two circumstances that we are confronted with here.

We do not wish to be understood as holding that if this

so called instruction had been given before the jury retired in the first instance that it would have been error, nor do we wish to be understood as holding that it would have been error if it had not immediately followed the court's inquiry as to how the jury stood numerically. Coming as it did after the jury had retired to consider of its verdict and had taken at least one ballot and had, in response to the court's question, stated that they stood eleven to one, we are of the opinion that it was prejudicial error for the trial court to instruct them to arrive at a verdict if "humanly possible". The trial court's statement that he intended no coercion, in our opinion, does not change the situation in its legal aspect.

The plaintiffs in error complain because this instruction was not reduced to writing, but delivered orally by the court of its own volition. This the plaintiffs in error contend was in violation of Code, 56-6-19, requiring all instructions to be written and submitted to counsel on each side with the opportunity to object. The section in question is mandatory. This Court held, in *State v. Murphy*, 93 W. Va. 477, 117 S. E. 147, that it was error to instruct a jury orally touching material matters in issue, evidently intending to so restrict the meaning of the statute. In this instance the court's instruction did not relate to "material matters in issue". It had to do entirely with the functioning of the jury in the performance of its duties. That being so, if there had been no error contained in its substance, we fail to see how it could have been prejudicial as a matter of form. We do not believe that it should be regarded as an instruction within the purview of Code, 56-6-19, though its subject matter is often covered in the form of instructions. If it had touched upon matters in controversy a different rule would be applied. See *Wolf v. State,* 200 Ind. 557, 571, 159 N. E. 545, 550; *Wendling v. Commonwealth,* 143 Ky. 587, 598, bottom, 137 S. W. 205, 210; *Miller v. Noell,* 193 Ky. 659, 661, 237 S. W. 373, 374; *Grammar v. State,* 103 Neb. 325, 331, 172 N. W. 41, 44.

We do not believe, under the circumstances of this case,

that a verdict for $7,500.00 was excessive. The seriousness of the injury cannot be questioned. Its ultimate effect is partly conjectural. The opinions of the expert summoned by the defendants and that of the plaintiff's two doctors were not far afield. The plaintiff suffered acutely for at least the six days that he was bedridden. The negligence of the landlord is alleged to have been wanton. Though opinions may differ, we cannot see how the amount of this verdict would shock the conscience.

We, for the reason stated, reverse the judgment of the Circuit Court of Kanawha County, set aside the verdict, and award the defendants a new trial.

*Reversed;*
*verdict set aside;*
*new trial awarded.*

Fox, Judge, concurring:

I concur in the reversal of the judgment of this case, on the grounds stated in the opinion prepared by Judge Kenna; but I do not agree to the holding embodied in the first point of the syllabus, and as stated in the opinion, that the bathroom involved was not under lease to Joseph T. Rose, the stepfather of the infant plaintiff. In my opinion, the bathroom was included in the lease to Rose, dated February 20, 1945. True, this lease, in terms, covers "Apart. No. 1, Right First Floor, corner 45th St. and Washington Ave., S. E., Charleston, W. Va.", but can it reasonably be assumed that control of the toilet facilities, in connection with the first floor of the building at that location, were intended to be retained by the landlord, or that the tenant would have rented the premises without toilet facilities being included in his lease. Certainly the back porches of the first floor apartments were leased, because they furnished the only access to the rear of the apartments; and if access to the bathroom could only be obtained by using the porches, as is clearly shown by the evidence, is it possible that the landlord leased the only access to the bathroom, while at the same time reserving a control thereof which he could not exercise except by

encroaching upon the premises which he had leased. Then, for that purpose did he retain such control? There is nothing in the record tending to show that he ever attempted to exercise the same, and all the evidence indicates that that the lessees of the two apartments exercised joint use and control of the bathroom from the time they occupied the apartments. The burden of proof was on the plaintiff to show that control was reserved by the landlord. What evidence sustained that burden? In my opinion, the bathroom was covered by the lease, and if this be true, then, as stated in the opinion filed, "the landlord as such is not responsible for keeping the lease premises in repair". A new trial of the case may develop new facts on this point, and this memorandum is written for the purpose of expressing my view on the question of liability, as the same is raised on the record now before the Court, and to reserve freedom in passing upon the same question, should it become involved in a new trial, and a further review is sought in this Court.