STATE OF WEST VIRGINIA

*v.*

PATRICIA JOHNSON

(No. 14622)

Decided July 29, 1981.

*James Wilson Douglas* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Curtis Power, III,* Assistant Attorney General, for defendant in error.

PER CURIAM:

The defendant, Patricia Johnson, was indicted for malicious wounding and was convicted of the lesser included offense of unlawful wounding in the Circuit Court of Clay County. She was sentenced to one to five years imprisonment, and subsequent to the circuit court's denial of her motion to set aside the verdict and award a new trial, prosecuted this appeal. She claims that the court erred in: (1) refusing to give Defendant's Instructions Nos. 10 and 11 dealing with self-defense, and (2) making a statement to the jury during its deliberations about the cost to the State in prosecuting a criminal trial.

The evidence in this case discloses that the defendant and the victim, Farrell Gray, were living together in a trailer in Clay County at the time of the shooting. The trailer was located near a tavern known as the Camp Creek Inn. On May 13, 1978, the defendant returned home from work, and not finding Gray at home, proceeded to the tavern where she found him.

An argument between the two ensued, and when the defendant refused to comply with Gray's demand to remove her possessions from the trailer, he went to the trailer and began throwing her clothing and personal belongings outside into the rain and mud. Betty McMellan, the owner of the Camp Creek Inn, testified that when Gray left the tavern the defendant said that she would kill him [Gray] if he threw her clothes out.

At this point, the defendant also left the tavern. The evidence is conflicting as to the events which next occurred. Gray testified that he started to return to the tavern after throwing the defendant's clothes outside, and that he was walking at a fast pace due to the rain. Just as he reached a point where he could see the rear of the tavern building, the defendant stepped from a corner of the building that projected out and shot him.

Although the defendant did not testify about the shooting, a statement which she gave to police shortly after the incident was introduced into evidence. The defendant stated that she left the tavern and removed some of her clothing and her shotgun from the trailer as Gray had ordered, placed them in her truck, then returned to the Camp Creek Inn. When Gray went to the trailer and began throwing the rest of her clothes outside, she followed him and found her gun laying on the couch. The defendant surmised in her statement that Gray had evidently gotten the shotgun out of her truck. The defendant then stated that because she was afraid she grabbed the gun off the couch and headed for the tavern where she intended to leave the gun with her sister before returning to talk to Gray. Her statement continued:

"When I ran outside Farrell was right behind me. He was chasing me. I made it to the power pole at the back door of the Camp Creek Inn. I don't remember if I laid the gun down or not. I remember telling Farrell to stop, but he just kept on coming."

The defendant then stated that she pulled the trigger, although she didn't remember cocking or loading the gun.

A Mr. Robert Scott was the only other eyewitness to the shooting. He testified that he drove into the parking lot at the rear of the Camp Creek Inn, and as he was getting out of his automobile, saw the defendant standing around a corner of the tavern so that neither she nor Gray who had begun walking from the trailer to the tavern could see each other. Mr. Scott also testified that when Gray came within eight to ten feet of the defendant, she caught sight of him and picked up the shotgun from where it had been leaning against the building, and shot and wounded Gray.

The defendant's first assignment of error is that the court erred in refusing to give her Instructions Nos. 10 and 11 on self-defense.* Instruction No. 10, as defendant concedes, was merely a general application of the law to the facts of this case. Since the defendant did obtain three other instructions which sufficiently covered the issue of self-defense, it was not error for the court to refuse to give this instruction. It is well settled in this State that it is not error to refuse to give an instruction which is adequately covered by another instruction or instructions given in the case. Syl. pt. 23, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966); Syl. pt. 20, *State v. Hamric*, 151 W.Va. 1,

---

* Defendant's Instruction No. 10:

"The Court instructs the jury that, if based upon the evidence, the jury believes that Ferrell Gray wrongfully assaulted the defendant and that the acts of the defendant, if any, were in self-defense, the jury must find the defendant not guilty."

Defendant's Instruction No. 11:

"The Court instructs the jury that the defendant had the right to repel force by force in the defense of her person, and if in so doing, she used only so much force as the necessity or apparent necessity of the case required, she is not guilty of any offense, though she wound her assailant in so doing."

151 S.E.2d 252 (1966). As we held in Syllabus Point 3 of *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966):

"It is not error to refuse to give an instruction to the jury, though it states a correct and applicable principle of law, if the principle stated in the instruction refused is adequately covered by another instruction or other instructions given."

Defendant's Instruction No. 11 would have informed the jury that the defendant had the right to "repel force by force in the defense of her person." The circuit court properly refused this instruction because there was no evidence in this case that Farrell Gray employed any force against the defendant at the time the shooting took place, and in addition, as previously noted, the theory of self-defense was adequately covered by other instructions. Therefore, this instruction was not supported by the evidence and was properly refused. *See*, Syl. pt. 3, *State v. Wayne*, 162 W.Va. 41, 245 S.E.2d 838 (1978).

Defendant's second assignment of error relates to the court's oral statement made to the jury during the course of its deliberations. In our opinion, this assignment is without merit. The case was submitted to the jury after two days of trial. After a short period the foreman requested that the jury be given the definition of the various charges against the defendant. The court informed the jury that such a request would necessitate the reading of all the instructions, and that the jury should decide whether this was what they wanted.

The jury again retired and the foreman then made a second request that the jury be given the exhibit which was the defendant's waiver and statement. When the jury emerged a third time, it had been deliberating for approximately an hour and a half. At this point the court asked the foreman if he thought the jury would be able to arrive at a verdict, and the foreman stated that it was questionable. The court answered: "We tried this case for a few days and I am not about to dismiss you at this time." The court then asked how the jury was divided numerically and was informed by the foreman that it was nine to three. Following that the court asked if the jury would

prefer to deliberate further that first day of deliberations rather than return on the following day. Receiving an affirmative answer, the court sent the jury back to their room where they deliberated until the dinner hour.

The jury reconvened then for a period of approximately two hours. At this point the court again inquired as to how the jury was divided numerically and was informed by the foreman that it was ten to two. The court proceeded to discuss with the foreman whether he thought the jury would be able to reach a verdict, and the foreman announced that he had serious reservations about the possibility. The following colloquy then took place:

"THE COURT: Now your foreman has said that he doesn't think you can get together. Is there anybody else that thinks they can? Let's just be plain about it. You have spent two days trying this case and there is no need, quite frankly, to keep you here. Now, I'm not asking that anybody change their mind. I'm just asking you if you think you can get together.

"FOREMAN: We would like to try.

"THE COURT: Is that the concensus of the jury, that you would like to try? It costs about one thousand dollars a day to hold Court. If you can arrive at a verdict it is better than no verdict at all. All right, I will give you another opportunity."

After the jury deliberated for another period, the foreman reported that the jury wanted to know if it was possible to recommend leniency on any of the possible verdicts. The court answered in the negative and the jury continued to deliberate until 10:16 p.m. when they returned a verdict finding the defendant guilty of unlawful wounding. The period between the time the court made the remark about the cost of a trial and when the jury returned their verdict was approximately an hour and a quarter.

The defendant contends that the remark of the trial judge concerning the expense to the State in holding a criminal trial amounted to coercion and undue pressure

against the minority members of the jury. In *Janssen v. Carolina Lumber Co.*, 137 W.Va. 561, 567, 73 S.E.2d 12, 15 (1952) we recognized that:

"What amounts to such coercion has often been discussed by the courts, and probably no general or definite rule as to what will constitute such coercion can be deduced or formulated from the decisions. Each case, to a very great extent, necessarily depends upon its own facts and circumstances."

In *Janssen*, the language of the trial court not only mentioned the expense of holding trial, but used very strong language directly against those jurors in the minority. The jury was told that "It is the jury's fault if you fail to agree," and that "if you are alone or in a small minority, should you not ask yourself whether the thing you cling to as a conscientious conviction might in fact be only a mistake in judgment, and whether the great majority of your fellow jurors, who took the same oath as you took as a juror, and who have consciences to satisfy the same as you have, might be right and you wrong."

The Court concluded that these remarks of the trial judge were improper. Syllabus Point 2 states:

"Where a jury has reported that it is unable to agree, and the trial court addresses the jury urging a verdict, and uses language the effect of which would be to cause the minority to yield its views for the mere purpose of reaching an agreement, and an agreement is so reached, the verdict will be set aside."

To the same effect is *Levine v. Headlee*, 148 W.Va. 323, 134 S.E.2d 892 (1964), where, citing Syllabus Point 2 of *Janssen*, the Court reversed in part on the basis of the trial judge's remarks to the jury that "If after the three hours and one-half you have already deliberated, there is a majority and minority opinion among you, I urge those jurors differing from the majority to more closely scrutinize the evidence for the purpose of determining the correctness of their own opinions." The prejudice the Court found was that the trial court's admonition was

directed to those jurors in the minority and not to the jury as a whole.

Earlier in *Lennox v. White,* 133 W.Va. 1, 54 S.E.2d 8 (1949), we held that it was error for the trial judge to inform the jury immediately after he had inquired as to their numerical vote that "Gentlemen, you are under the highest duty, whatever your differences as between the one and the eleven, to find out what that is and if humanly possible and consistent with right and justice to compose your differences and arrive at a verdict." The Court emphasized the fact that the trial judge had taken a numerical vote and then admonished the jury in a manner that "seemed to assume that one or more had not comprehended fully the duty of a juror." 133 W.Va. at 6, 54 S.E.2d at 11.

In each of these cases the trial court's remarks were found to be coercive and prejudicial because they were addressed to those jurors in the minority, and as such, had the effect of causing the minority to yield its view in order to reach a verdict. Whether or not the remark referring to the expense to the State in conducting a criminal trial was prejudicially coercive in the case before us must be determined in light of the circumstances involved. *Janssen v. Carolina Lumber Co., supra.* We fail to see how the remark amounted to coercion when read in the context of the entire supplemental charge. The remark was not directed toward the two juror minority, nor was it intended to force them to yield their views for the purpose of reaching agreement. Therefore, we conclude that the trial court was within its discretion in its effort to have the jury agree on a verdict, and the fact that the court mentioned the cost of a criminal trial is not objectionable in itself. *See, Evans v. State,* Ala.Crim.App., 338 So.2d 1033 (1976); *State v. Campbell,* ____ Iowa ____, 294 N.W.2d 803 (1980); *Jackson v. State,* 204 Kan. 841, 466 P.2d 305 (1970); *Bookbinder v. Rotondo,* 109 R.I. 346, 285 A.2d 387 (1972); *Poindexter v. Commonwealth,* 213 Va. 212, 191 S.E.2d 200 (1972); *Ziegler v. State,* 65 Wis.2d 703, 223 N.W.2d 442 (1974). *See*

*generally*, 76 Am.Jur.2d *Trial* § 1067 (1975); 4 *Wharton's Criminal Procedure* § 560, at 74 (C. E. Torcia ed. 1976).

The defendant also contends that the remark of the trial judge relating to the expense of trial violates *W.Va. Code*, 56-6-19 which requires all instructions to be written and submitted to counsel for both parties, giving them an opportunity to object. Although this section is mandatory, this Court held in *State v. Murphy*, 93 W.Va. 477, 117 S.E. 147 (1923), "that it was error to instruct a jury orally touching material matters in issue, evidently intending to so restrict the meaning of the statute." *Lennox v. White*, 133 W.Va. at 7, 54 S.E.2d at 11-12.

In the case before us the remark made by the trial court could not be considered an instruction and clearly did not relate to "material matters in issue." It had only to do with the functioning of the jury in the performance of its duties. As such, we find that it did not violate the statutory law prohibiting oral instructions.

For the reasons stated above, the judgment of the Circuit Court of Clay County is affirmed.

*Affirmed.*