# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 17-0904** (Mercer County 17-F-19-DS)

**Charles B.,**
**Defendant Below, Petitioner**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Charles B., by counsel R. Thomas Czarnik, appeals the Circuit Court of Mercer County's September 22, 2017, order denying his motion for a new trial following his conviction of one count of first-degree sexual assault, one count of sexual abuse by a parent of a child, and one count of incest.[1] Respondent the State of West Virginia, by counsel Scott E. Johnson, filed its response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted in 2016 on fifty-four counts of crimes, including first-degree sexual assault; sexual abuse by a parent, guardian, or custodian; and incest, all against his daughter. Prior to trial, petitioner gave a statement to Mercer County Sheriff's Detective Steven Sommers that was the subject of motions to suppress; petitioner argued that Detective Sommers did not inform petitioner that he was free to go before being interviewed. The circuit court entered a written order finding that the statement was admissible for impeachment purposes and took under advisement the admissibility of the statement in the State's case-in-chief. During trial, the circuit court informed the parties that it had listened to the actual tape recording of petitioner's statement and determined that the statement was admissible in the State's case-in-chief. That trial resulted in a mistrial because the jury was unable to arrive at a unanimous verdict.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Thereafter, the State obtained a superseding indictment, Indictment No. 17-F-19. During the second trial, the victim, then-twenty-years-old, testified and identified petitioner as her father. She testified that petitioner sexually molested her when she was a young child, between the ages of three and six, mainly "oral sex, but that I could also recall times where he – I would be laying on the bed and he would be over top of me rubbing his penis against my vagina." She denied any penetration but testified that he would finish in a towel beside of the bed and that she was then allowed to put her clothes back on and go about her day. The victim also testified that "it was essentially kind of like a game, he would tell me to see how many licks I could get on – on his penis." A licensed professional counselor testified that the victim displayed symptoms consistent with someone who had experienced sexual abuse trauma. Detective Sommers testified about the same statement that was admitted during the first trial.

At the conclusion of the trial, the jury deliberated for approximately two hours before notifying the circuit court that it had not reached a unanimous verdict. The circuit court told counsel that it was "going to bring the jury back out and instruct them, as I did before, repeated, their verdict has to be unanimous, either all one way or all the other. . . ." After the jury was seated, the circuit court advised them that

> you don't have a verdict until it's unanimous. I understand that, you know, you don't have unanimous results yet. That's okay. . . So what I want you to do is go back and refresh your recollection about what those instructions said about considering each other's opinions, listen to the arguments of each other, et cetera, and give it your best shot to make a decision, and I'm going to let you go back and try that. If you cannot ultimately reach a unanimous verdict well, then we'll see what we do at that point. But you really haven't been back there long enough yet for me to have concern. . . So you've got to have a unanimous verdict, okay. It's either going to be all one way, or all the other. And if at some point you can't do that, you need to let me know that. But after two days of testimony and a couple hours of deliberation, we're not to the point where we're ready to say you can't keep working at it. We're not there yet. All right. So go on in the back and resume your deliberations . . . .

The circuit court then instructed the attorneys to stay nearby in case they were needed. The jury later convicted petitioner on three counts and acquitted him of the remaining charges. The circuit court sentenced petitioner to consecutive terms of imprisonment of fifteen to thirty-five years, ten to twenty years, and five to fifteen years.

Petitioner filed a motion for a new trial, which the circuit court, without explanation, denied in an amended order entered on September 19, 2017. The circuit court then entered its September 22, 2017, order "*sua sponte* pursuant to [petitioner's] 'Motion for New Trial.'" In that order, the circuit court indicated that it did not give an *Allen* instruction, but answered a jury question about the requirement that the jury's verdict had to be unanimous. It concluded that there was "no reason to change its ruling denying the motion for new trial and it is accordingly denied." Petitioner appeals from that order.

We have previously set forth the standard of review applicable to the denial of a motion

for a new trial following a conviction by a jury:

> "As a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994). . . . Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." *Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995).

*State v. Swims*, 212 W. Va. 263, 267, 569 S.E.2d 784, 788 (2002).

While petitioner sets forth eight assignments of error, some of which have subparts, he divides his arguments into six areas. First, he contends that the *Allen* instruction, or charge, was improper.[2] He contends that the circuit court gave a partial and coerced *Allen* instruction, without opportunity or forewarning to counsel, when the jury had deliberated for only two hours. The remainder of petitioner's argument is unclear and difficult to follow, aside from pointing to language found in a traditional *Allen* instruction that was not given by the circuit court in the instant case. It is important to note that petitioner did not object to the instruction below. In addition, the record shows that after the judge excused the jury, he specifically noted the presence of both counsel. Because petitioner failed to object, his argument is worded in a manner that does not allow this Court to fully understand the same, and he does not assert plain error, we cannot find error on this ground. *See State v. Guthrie*, 205 W. Va. 326, 344, 518 S.E.2d 83, 101 (1999).

His second alleged error is that the circuit court erred in denying his request to introduce explanatory testimony as to how fake Facebook messages can be created. In a confusing argument, petitioner appears to assert that while a photograph depicts a Facebook message sent

---

[2] An *Allen* charge is a "supplemental instruction given to encourage deadlocked juries to reach an agreement." F. Cleckley, 2 *Handbook on West Virginia Criminal Procedure,* at 257 (1993). Dealing with an *Allen*-type charge, we have stated that

> [w]here a jury has reported that it is unable to agree and the trial court addresses the jury urging a verdict, but does not use language the effect of which would be to cause the minority to yield its views for the purpose of reaching a verdict, the trial court's remarks will not constitute reversible error.

Syllabus Point 2, *State v. Johnson,* 168 W.Va. 45, 282 S.E.2d 609 (1981).

*State v. Shabazz*, 206 W. Va. 555, 559, 526 S.E.2d 521, 525 (1999).

from one witness to another witness, that message was fraudulent. Petitioner asserts that witness testimony regarding such programs does not constitute expert testimony. Again, petitioner's argument is difficult to comprehend. However, it appears that petitioner sought to elicit testimony from a witness regarding the authenticity of Facebook messages and how they can be "forged."

> In addressing the issue of lay witness opinion testimony, we have held that

> [i]n order for a lay witness to give opinion testimony pursuant to Rule 701 of the West Virginia Rules of Evidence, (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; (3) the opinion must be helpful in understanding the testimony or determining a fact in issue; and (4) the opinion must not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Syl. Pt. 1, *State v. Johnson*, 238 W. Va. 580, 797 S.E.2d 557 (2017). As respondent points out, petitioner admitted the proposed witness did not have any training in Facebook applications, had not gone to college, was not a professional website developer, was not a professional Facebook consultant, had no training on the Facebook platform, had no website training, and she conceded that she had no training on Facebook Java SDK, SDK for Python, Facebook SDK for Android, or REACT.[3] Another witness was permitted to testify that the message was not from her, though it appeared to be from her account. That witness also testified that her activity log did not reveal any activity on the date of the alleged message. For these reasons, we do not find that the circuit court erred in refusing to allow the proposed witness to offer the requested testimony.

In his third assignment of error, petitioner argues that the State committed various discovery violations. While he makes a number of factual assertions, he fails to cite to the record in support of any of these assertions. As set forth in West Virginia Rule of Appellate Procedure 10(c)(7), in part,

> [t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Due to petitioner's failure to comply with this requirement, we decline to address this alleged error.

Petitioner's fourth assignment of error takes issue with the language of the counts charged in the indictment. However, this argument is so unclear that this Court is unable to fully address the same. Generally, he contends that certain counts of the indictment charged acts in the

---

[3] Each of these are software and/or coding applications for computers and/or mobile devices.

alternative or disjunctive in violation of the West Virginia Constitution, art. III § 14. He also asserts that an "attempt" is not an offense under a charge of sexual crimes. He argues therein that this was plain error affecting his substantial rights. In response, the State argues that because the circuit court failed to rule on petitioner's motion to dismiss the counts at issue, this Court is barred from reviewing this argument on appeal. The State also asserts that these arguments are insufficiently briefed to allow this Court to address them.

This Court has long held that the "'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." *State v. Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995). "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at syl. pt. 7. We have further noted that the plain error rule should only be exercised to avoid a miscarriage of justice and reserved for correction of those few errors that "'seriously affect the fairness, integrity or public reputation of judicial proceedings.' *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1, 12 (1985)." *State v. Peterson*, 239 W. Va. 21, 32, 799 S.E.2d 98, 109 (2017). Based upon petitioner's argument, we cannot find that the circuit court committed plain error in its consideration of the counts at issue.

Petitioner's fifth assignment of error is that his statement to police should have been excluded. He asserts that he was not specifically told that he was "free to go" and was not read his Miranda rights. Petitioner further argues that because he was willing to take a polygraph examination but was not given one, his willingness to do so was admissible to show his lack of consciousness of guilt. Whether a person is in custody is determined by an objective test: "viewing the totality of the circumstances, would a reasonable person in the defendant's position have considered his freedom of action restricted to the degree associated with a formal arrest." *State v. Potter*, 197 W. Va. 734, 752, 478 S.E.2d 742, 752 (1996). In this case, while petitioner was interviewed at a police station, he voluntarily chose to go there with his wife. Detective Sommers asked if petitioner understood that he was there of his own freewill, and petitioner confirmed that understanding. The interview lasted just under forty-four minutes and then Detective Sommers told petitioner that he was finished and advised petitioner that he was going to speak with petitioner's wife. Petitioner was excused and went to the public lobby. These facts establish that petitioner was not in custody. In addition, we have held that "[r]eference to an offer or refusal by a defendant to take a polygraph test is inadmissible in criminal trials to the same extent that polygraph results are inadmissible." Syl. Pt. 2, *State v. Chambers*, 194 W. Va. 1, 459 S.E.2d 112 (1995). For these reasons, we find no merit in this alleged error.

The final alleged error addressed by petitioner is his assertion that the circuit court erred by excluding lay witnesses with claimed personal knowledge of child sexual abuse. He argues that these witnesses should have been permitted to offer testimony regarding their observations of the victim's actions, which he claims are inconsistent with victims of such abuse. Pointing to Rules 602[4] and 701[5] of the West Virginia Rules of Evidence, petitioner contends that the circuit

---

[4] Rule 602 of the West Virginia Rules of Evidence provides that

(continued…)

court abused its discretion in "refusing witnesses testimony that lacks on personal experience, [k]nowledge, and/or observation of '[a]voidance' behavior of victims of child sexual abuse toward the perpetrator; the behavior of the accuser over [fifteen] years time was inconsistent with abuse."

Again, petitioner has failed to comply with West Virginia Rule of Appellate Procedure 10(c)(7), as there are no citations to the record to support his arguments. Moreover, this Court has long held that "'[t]he determination of whether a witness has sufficient knowledge of the material in question so as to be qualified to give his opinion is largely within the discretion of the trial court, and will not ordinarily be disturbed on appeal unless clearly erroneous.' *Cox v. Galigher Motor Sales Co.,* 158 W.Va. 685, 213 S.E.2d 475 (1975)." Syl. Pt. 3, *State v. Haller,* 178 W. Va. 642, 363 S.E.2d 719 (1987). Further, we have previously addressed this issue, holding as follows:

> Expert psychological testimony is permissible in cases involving incidents of child sexual abuse and an expert may state an opinion as to whether the child comports with the psychological and behavioral profile of a child sexual abuse victim, and may offer an opinion based on objective findings that the child has been sexually abused. Such an expert may not give an opinion as to whether he personally believes the child, nor an opinion as to whether the sexual assault was committed by the defendant, as these would improperly and prejudicially invade the province of the jury.

Syl. Pt. 7, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). It does not appear that the witnesses petitioner desired to present to offer such testimony were psychological experts. Therefore, we find that the circuit court was not clearly erroneous in refusing to allow them to testify as requested.

For these reasons, we find no error in the circuit court's denial of petitioner's motion for a new trial following his convictions as set forth above.

---

[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

[5] Rule 701 of the West Virginia Rules of Evidence provides as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment