## Wytheville.

### JENNINGS V. MARSTON.

#### June 14, 1917.

#### Absent, Burks, J.*

1. EJECTMENT—*Common Source of Title—Common Grantor.*—Conveyances from the same grantor of separate tracts of land, although they may be adjoining tracts, do not necessarily constitute, in contemplation of law, a common source of title. The terms, "common grantor" and "common source of title," are not always synonymous and interchangeable, although in most cases the facts are such that the two terms do mean the same thing.

2. EJECTMENT—*Common Source of Title—Common Grantor—Estoppel.*—The rule that a plaintiff in ejectment need not trace title back of the common source rests upon the principle of estoppel, the defendant not being allowed the inconsistency of claiming both under and against the same title. But the inconsistency must be actual and substantial; and when it affirmatively appears that the real dispute is as to the location of a boundary line between two distinct tracts, one of which the common grantor derived from one source and conveyed to the plaintiff, and the other of which he derived from another source and conveyed to the defendant, there is no inconsistency and, therefore, no estoppel to prevent the defendant from denying that the plaintiff's grantor has title to the land in dispute.

3. ESTOPPEL—*Deed—Warranty of Title—Mortgages and Deeds of Trust.*—A tract of land described in the declaration in an action of ejectment was known as the "Badkins Tract," and its southern boundary, as called for in all of the deeds in evidence describing the same, was the "Cranston Mill-pond." This pond or dam has been down a number of years, and the stream which formerly flowed into and made it now runs through the land once constituting its bed. The land in actual dispute lies between the middle thread of the stream and what was formerly the edge of the pond on the side next to

---

*Case submitted before Judge Burks took his seat.

the "Badkins Tract." The plaintiff's ultimate contention, denied by the defendant, is that the deeds under which she claims and which calls for the pond as a boundary, carry her title to the center of the stream. Assuming that the deeds under which the plaintiff claims the "Badkins Tract" did extend to the middle thread of the stream, forming the mill-pond, the grantors were not estopped from subsequently purchasing an adverse title to the land in dispute and would not have been estopped from purchasing the entire tract, because their deed to plaintiff's grantor was made merely for the purpose of securing a debt, contained no warranty of title, and "the grantor undertook no responsibility either as to title or quantity."

4. EJECTMENT—*Plaintiff's Title.*—In an action of ejectment the plaintiff must recover upon the strength of his own title, which he must connect with the Commonwealth, or with a common source with that of the defendant. There are exceptions to the rule, but the case at bar does not fall within any of them. The defendant, for example, was not a mere trespasser or intruder but held a deed for the land under which he was exercising the acts of ownership and possession resulting in this suit.

5. BOUNDARIES—*Waters and Watercourses.*—Riparian owners (on non-navigable streams) are presumed to own to the middle thread of the stream; and when they do own to the middle and convey by a deed calling for the stream as a boundary, they are conclusively presumed in law to convey to the middle, unless they expressly exclude that presumption by words in the conveyance. The presumption of ownership to the middle of the stream, however, is a rebuttable presumption, and yields to proof that the edge of the stream is the true boundary line. When this latter fact affirmatively appears, there can be no presumption that a deed calling for the stream was intended as a conveyance to the middle. A grantor is not presumed to intend to convey more than he owns.

Error to a judgment of the Circuit Court of the city of Williamsburg and county of James City, in an action of ejectment. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*S. O. Bland* and *Henley, Hall & Hall,* for the plaintiff in error.

*Frank T. Armistead* and *B. D. Peachy, Jr.,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This is an action of ejectment brought by Ann E. Marston against A. W. Jennings. We will hereinafter designate these parties, respectively, as plaintiff and defendant, in accordance with their positions in the circuit court. There was a judgment below for the plaintiff upon a demurrer which she interposed to the evidence, and thereupon the defendant brought the case here upon a writ of error.

No effort was made by the plaintiff to trace title to the Commonwealth, and the first question presented for our decision is whether the title under which she claims is shown to have been derived, as she contends, from a source common with that of the defendant.

The tract of land described in the declaration is known as the "Badkins Tract," and its southern boundary, as called for in all of the deeds in evidence describing the same, is the "Cranston Mill-pond." This pond or dam has been down for a number of years, and the stream which formerly flowed into and made it now runs through the land once constituting its bed. The land in actual dispute lies between the middle thread of the stream and what was formerly the edge of the pond on the side next to the "Badkins Tract." (The plaintiff's ultimate contention, denied by the defendant, is that the deeds under which she claims and which call for the pond as a boundary carry her title to the center of the stream.)

The plaintiff's documentary title, so far as shown, is as follows: (1) Deed of trust (to secure a debt), dated January 20, 1886, from A. H. and Charles Cranston (alleged common grantors) to E. B. Ratcliff, trustee; (2) Deed, dated October 6, 1890, (consummating a foreclosure and sale under the trust deed), from H. B. Ratcliff, trus-

tee, to D. W. Marston; (3) Deed, dated June 1, 1914, from the heirs at law of D. W. Marston, deceased, to Ann E. Marston, the plaintiff. Each of these deeds convey the "Badkins Tract," and, as stated, describe it as bounded on the south by the mill-pond.

Having traced her own title as above, the plaintiff then introduced two deeds in the defendant's chain of title which, with their recitals and certain oral and undisputed evidence, show that the defendant's title was derived from Charles Cranston in his own right and as the survivor of his brother, A. H. Cranston. These two deeds, so far as they are material in this connection, were as follows: (1) Deed, dated January 15, 1913, from Charles Cranston and wife to the Cambridge Manufacturing Company for "a certain water grist-mill formerly known and called Bush's mill * * * and the mill-pond which, by estimation, is ninety acres of land, be the same more or less, covered with water, and about thirty-five acres of land, be the same more or less, being a portion of the hundred acres belonging to said mill property." The deed contains no further description of the ninety-acre tract, but describes the thirty-five acres by metes and bounds; (2) Deed, dated April 28, 1914, from Cambridge Manufacturing Company to A. W. Jennings, the defendant in this case. This deed conveyed the ninety acres and the thirty-five acres by substantially the same description as above; and each of the two deeds warranted the title generally as to the latter, and specially as to the former tract. It is under the conveyance of the ninety acres that the defendant claims title to the land in controversy.

It will thus be seen that the title of the plaintiff and defendant, respectively, is each derived from the same grantors, Charles and A. H. Cranston; but at this point the question arises, whether conveyances from the same grantor of separate tracts of land, although they be adjoining tracts, necessarily constitute, in contemplation of

law, a common source of title. It is contended by the plaintiff that the terms, "common grantor" and "common source of title," are synonymous and may always be used interchangeably. We do not think this can be maintained as a proposition universally and necessarily true. In most cases the facts are such that the two terms do mean the same thing, and it is possibly for this reason that the question arising in this case is an open one in Virginia as well as elsewhere generally. The question was raised in *Smith* v. *Stanley*, 114 Va. 117, 75 S. E. 742, but was not decided because the defendant had asked for an instruction which practically admitted that the common grantor was, in fact, the owner of the identical right or title under which both he and the plaintiff claimed. Looking to the reason of the rule that a plaintiff in ejectment need not trace title back of the common source, there is no difficulty in settling the question under discussion. The rule rests upon the principle of estoppel, the defendant not being allowed the inconsistency of claiming both under and against the same title. But the inconsistency must be actual and substantial; and when it affirmatively appears, as we shall see it does in this case, that the real dispute is as to the location of a boundary line between two distinct tracts, one of which the common grantor derived from one source and conveyed to the plaintiff, and the other of which he derived from another source and conveyed to the defendant, there is no inconsistency and, therefore, no estoppel to prevent the defendant from denying that the plaintiff's grantor had title to the land in dispute.

The oral evidence of the defendant, which was not objected to, shows that Charles and A. H. Cranston derived their title to the "Badkins Tract" from one source and to the mill-pond tract from another source, and that they had disposed of their interest in the former before they acquired their interest in the latter.

If we assume that the deeds under which the plaintiff claims "the Badkins Tract" did extend to the middle thread of the stream, forming the mill-pond, the Cranstons were not estopped from subsequently purchasing the land in dispute, and would not have been estopped from purchasing the entire tract, because their deed to Ratcliff, trustee, was made merely for the purpose of securing a debt, contained no warranty of title, and, to use the language of Baldwin, J., in *Sutton* v. *Sutton,* 7 Gratt. (48 Va.) 234, 56 Am. Dec. 109, "the grantor undertook no responsibility either as to title or quantity."

The fact that the Cranstons conveyed the mill-pond tract to the Cambridge Manufacturing Company with special warranty is plausibly accounted for by the testimony of Charles Cranston himself, who says that the ninety-acre tract was conveyed by special warranty because of an adverse claim which had been asserted thereto by a third party who does not appear to, at any time, have had any interest in or claim to the "Badkins Tract."

The established and familiar general rule is that in an action of ejectment the plaintiff must recover upon the strength of his own title, which he must connect with the Commonwealth, or with a common source with that of the defendant. There are exceptions to the rule but this case does not fall within any of them. The defendant, for example, was not a mere trespasser or intruder but held a deed for the land under which he was exercising the acts of ownership and possession resulting in this suit.

Having reached the conclusion that the plaintiff failed to make out a *prima facie* case entitling her to recover, it becomes unnecessary to go at length into a discussion of the further question whether the deed under which she claims the "Badkins Tract" should be construed to extend to the edge or the middle of the stream. She claims to the middle, and the defendant claims between the middle and what was formerly the northern edge thereof. That the question of

construction does not arise may be demonstrated by supposing that the defendant's deed, instead of covering only a part, had covered all of the "Badkins Tract." Either in the case supposed, or in the case as it exists, the plaintiff was bound in the first instance to make out her own title under the rule above indicated, and having failed to do so, her demurrer to the evidence should have been overruled.

We may add, however, that there was evidence tending to show that the former owners of the "Badkins Tract" had never in fact owned or claimed further than the edge of the pond; and that the southern boundary of that tract was indicated by an old and marked line following the high-water mark of the pond bed. In this state of the case, it by no means follows, as a matter of law, that the deed to D. W. Marston extended further than the northern edge of the pond. Riparian owners (on non-navigable streams) are presumed to own to the middle thread of the stream; and when they do own to the middle and convey by a deed calling for the stream as a boundary, they are conclusively presumed in law to convey to the middle, unless they expressly exclude that presumption by words in the conveyance. The presumption of ownership to the middle of the stream, however, is a rebuttable presumption, and yields to proof that the edge of the stream is the true boundary line. When this latter fact affirmatively appears, there can be no presumption that a deed calling for the stream was intended as a conveyance to the middle. A grantor is not presumed to intend to convey more than he owns.

For the foregoing reasons the judgment of the circuit court will be reversed, and this court will enter up judgment for the defendant upon the demurrer to the evidence.

*Reversed.*