OF

# NORTH CAROLINA

AT

# RALEIGH

## FALL TERM, 1967

ECONOMY FINANCE CORPORATION v. JASPER LEATHERS ET UX.,
LOUISE LEATHERS.

(Filed 22 November, 1967.)

1. **Estoppel § 1— Owners of land held estopped to deny they held title at time they executed second deed of trust on same land.**

   The owners of land executed a deed of trust which was duly foreclosed, the deed of trust and the foreclosure deed being registered, and the property was bought in by the *cestui* named therein. Subsequent thereto the owners executed a second deed of trust on the same land for the benefit of the same *cestui*, and the *cestui* named therein later assigned his interest to plaintiffs. The second deed of trust was later foreclosed and the foreclosure deed made to plaintiffs who purchased at the sale. On the following day the trustee and the *cestui* in the first deed of trust executed a deed of trust in favor of plaintiffs. Later the trustee and *cestui* in the second deed of trust executed an ambiguous release deed to the original owners. The original owners remained in possession throughout, and plaintiffs brought this action in ejectment against them. *Held:* The original owners are estopped to deny that they had title at the time they executed the second deed of trust, and the evidence was sufficient to be submitted to the jury on the issue of plaintiff's ownership and right of possession under their foreclosure deed of the second deed of trust.

2. **Ejectment § 6—**

   The common source of title doctrine by which a defendant in an ejectment action is precluded from denying the validity of a source of title under which both plaintiff and defendant claim and by which such defendant is prevented from showing a paramount title outstanding in a third person which is independent of the common source without connecting himself with it does not prevent a defendant from showing that he or a third person has acquired a title under the common source superior to that of plaintiff, since such a showing is not an attack upon the common

source but instead affirms the validity of the common source by showing good title therefrom into a third person.

APPEAL by plaintiff from *Bone, E.J.,* 23 May 1967 Civil Session of PITT.

Civil action by an Indiana corporation in ejectment to be put in the possession of a certain lot or parcel of land together with the improvements thereon situate in Greenville township, Pitt County, State of North Carolina, and to recover rents and profits of said property and damages for the unlawful retention of possession of said property by defendants. Defendants in their answer deny that plaintiff is an Indiana corporation and by their allegations place title in issue. Both plaintiff and defendants offered evidence all of which was documentary and there was no oral testimony. The trustee's deed and the other instruments through which plaintiff asserts its claim to ownership plus those upon which defendants base their defense are a part of a highly complicated and confused series of conveyances, each item of which is separately specified below with a brief summary of all the facts and details in regard thereto which are pertinent to this litigation.

Plaintiff first offered into evidence six items, designated Plaintiff's Exhibits 1, 2, 3, 4, 5, and 6, which are summarized below. The parenthetical enumeration following the various dates of execution and recordation is included to facilitate the determination of their proper order for which purpose no distinction is made between dates of execution and recordation. This applies also to defendants' exhibits.

Plaintiff's Exhibit 1 was two documents showing proof of plaintiff's corporate existence in the State of Indiana consisting of a paper writing executed by the Secretary of State of that State attesting to plaintiff's due corporate existence in Indiana, followed by a paper writing executed by the Governor of Indiana certifying that the Secretary of State was fully authorized to attest to plaintiff's due corporate existence in that State.

Plaintiff's Exhibit 2 was a warranty deed from John Jasper Leathers and wife, Dorothy Clark Leathers, to Louise Leathers, *feme* defendant. Executed: 10 February 1961 (1). Recorded: 4 October 1961, 9:54 a.m. (3).

Plaintiff's Exhibit 3 was a deed of trust from Jasper Leathers and wife, Louise Leathers, defendants, to Julius C. Smith, III (hereinafter referred to as Smith), trustee, in favor of Wise Homes, Inc., of Sharpsburg, North Carolina (hereinafter referred to as Wise), *cestui que trust;* securing defendants' note in the amount of $6,960. Executed: 1 May 1963 (6). Recorded: 12 August 1964 (13).

Plaintiff's Exhibit 4 was an assignment by Wise to Economy Finance Corporation, plaintiff, by which plaintiff acquired Wise's interest as *cestui que trust* under the deed of trust specified above as plaintiff's Exhibit 3. Executed: 29 July 1963 (9). Recorded: 10 September 1964 (15).

Plaintiff's Exhibit 5 was an instrument denominated an "Indenture" executed by plaintiff substituting Martin L. Cromartie (hereinafter referred to as Cromartie) in place of Smith as trustee in the deed of trust specified above as Plaintiff's Exhibit 3. Executed: 7 July 1964 (12). Recorded: 9 September 1964 (14).

Plaintiff's Exhibit 6 was a trustee's deed or "foreclosure deed" from Cromartie, substitute trustee, to plaintiff, *cestui que trust,* pursuant to a foreclosure sale made under the terms of the deed of trust specified above as Plaintiff's Exhibit 3. This deed of trust having been in default, foreclosure was had thereunder on 14 October 1964 at which time plaintiff became the last and highest bidder and bought the property in for the price of $625, receiving this trustee's deed. (Our examination of the photostatic copy of this trustee's deed as it appears of record in the Pitt County Registry reveals an error therein in that it recites that the deed of trust foreclosed under was executed 1 May *1964* while, in fact, the record of that instrument shows it to have been executed 1 May *1963* as stated above under Plaintiff's Exhibit 3.) Executed: 28 November 1964 (16). Recorded: 10 December 1964 (17).

Defendants introduced in evidence three instruments designated Defendants' Exhibits A, B, and C, which are summarized as follows:

Defendants' Exhibit A was a deed of trust from defendants to Smith, trustee, in favor of Wise, *cestui que trust;* securing defendants' note in the amount of $7,173.60. Executed: 16 August 1961 (2). Recorded: 4 October 1961, 9:54 a.m. (3).

Defendants' Exhibit B was a trustee's deed or "foreclosure deed" from Smith, trustee, to Wise, *cestui que trust,* pursuant to a foreclosure sale made under the terms of the deed of trust specified above as Defendants' Exhibit A. This deed of trust having been in default, foreclosure was had thereunder and a public sale was held by the trustee on 5 March 1963 at which time Wise became the last and highest bidder and bought the property in for the price of $3,100, receiving this trustee's deed. Executed: 19 March 1963 (4). Recorded: 16 April 1963 (5).

Defendants' Exhibit C was a deed of trust from Wise to Smith, trustee, in favor of plaintiff, *cestui que trust;* securing Wise's note in the amount of $6,962.80. Executed: 2 May 1963 (7). Recorded: 8 May 1963 (8).

After defendants had rested, plaintiff offered its final item of evidence, plaintiff's Exhibit 7. This exhibit was termed a "release deed" from Wise and trustee Smith to the defendants executed by the former for the consideration of $1 paid them by the latter. This instrument contains language which tends to create ambiguity and uncertainty, and the material part of it reads as follows:

"WHEREAS, Jasper Leathers and wife, Louise Leathers, heretofore executed to said Julius C. Smith, III, Trustee, a certain deed of trust dated August 16, 1961, which deed of trust is recorded in the Pitt County Registry . . . [that instrument being Defendants' Exhibit A, specified above], to secure a certain note therein set out due and payable to Wise Homes, Inc. of Sharpsburg; and whereas, Jasper Leathers and wife, Louise Leathers, have requested that Wise Homes, Inc. of Sharpsburg release from the lien of said deed of trust all of the land therein conveyed which is described hereinafter, and the said Wise Homes, Inc. of Sharpsburg has agreed so to do and has requested said Trustee to join in said release;

"Now, THEREFORE, the said parties of the first part [Wise and Smith], for and in consideration of the sum of One Dollar to each of them paid by the parties of the second part [defendants], have remised and released and by these presents do remise, release, and forever quitclaim unto the said parties of the second part [the land in question]. . . .

*        *        *

"To HAVE AND TO HOLD, said real property . . . free and discharged from the lien of the deed of trust dated August 16, 1961. . . ." Executed: 14 November 1963 (10). Recorded: 13 February 1964 (11).

All of the documents which were introduced in evidence were duly recorded in the office of the Pitt County Register of Deeds.

From a judgment of compulsory nonsuit entered by the court on motion of defendants, plaintiff appeals.

*Harrell & Mattox by Fred T. Mattox for plaintiff appellant.*
*Richard Powell and Mitchell & Murphy for defendant appellees.*

PARKER, C.J.  A concise summary of this chain of circumstances is as follows: First was the execution of a warranty deed placing title in the *feme* defendant. Next and more than six months later, she and her husband, defendants, executed their first deed of trust in favor of Wise. This deed of trust was security for their note in

the amount of $7,173.60. Almost a month and a half later both of these instruments were simultaneously recorded, to wit, at 9:54 a.m. of the same day. One year and five months later this deed of trust was foreclosed and the land was sold by the trustee at public auction pursuant to a power of sale contained in the instrument. At that time *cestui* Wise, being the last and highest bidder, bought the property in for $3,100 and received a trustee's deed which was subsequently recorded. Up to this point all the transactions are regular and each conveyance which has been executed has been duly recorded before the execution or recordation of any other instruments concerning the *locus in quo*. However, with title vested in Wise, as above described, and with no apparent claim to or interest in the fee, defendants executed a second deed of trust in favor of Wise. This deed of trust was intended as security for their note in the amount of $6,960 and remained unrecorded for more than a year and three months during which time other transactions and conveyances concerning the disputed land intervened. On the day immediately following the execution of defendants' second deed of trust, Wise executed its own deed of trust in favor of plaintiff securing a note evidencing an indebtedness to the plaintiff of $6,962.80. This instrument was recorded a few days later. Thereafter an assignment was made by Wise to plaintiff by which plaintiff acquired any purported interest which Wise may have had as *cestui que trust* under the second deed of trust executed by defendants. This assignment was not entered of record for almost a year and two months, and during that interim period the land in question was further dealt with and transferred. Some three and one-half months after the execution of this assignment of the interest of the *cestui* under defendants' second deed of trust, Wise and Smith, for the consideration of $1, executed to the defendants the ambiguous "release deed," the pertinent parts of which are quoted above, which purported to restrict itself to a relinquishment of whatever interest the *cestui* and the trustee had under the first deed of trust executed by defendants which deed of trust had already been foreclosed under. That is, this "release deed" attempted to limit itself to the release of a non-existent interest. This "release deed" was recorded slightly less than three months later and before any of the other events herein involved had transpired. Next was the execution by plaintiff of an instrument by which a new trustee was substituted for the original one in defendants' second deed of trust. The last conveyance involved in this litigation was the trustee's deed executed by substitute trustee Cromartie to the plaintiff pursuant to a foreclosure of the defendants' second deed of trust under which plaintiff had been the *cestui que trust* by virtue of the assignment. Ac-

cording to the recitals in this trustee's deed a public foreclosure sale was held at the courthouse door in Greenville, Pitt County, at which plaintiff became the last and highest bidder for the price of $625.

In paragraph four of its complaint, plaintiff alleges, in substance, that the land in question was sold on 14 October 1964 by the trustee under a power of sale contained in the second deed of trust executed by defendants (Plaintiff's Exhibit 3) ; that plaintiff was the last and highest bidder at that sale; that it has complied with the terms of the bid; that it is now the owner of the land by virtue of the duly recorded deed to it from substitute trustee Cromartie dated 28 November 1964 (Plaintiff's Exhibit 6) ; and that defendants have no further right, title or interest in or to said land.

In paragraph five of its complaint, plaintiff alleges, in substance, that the defendants were in possession of the premises at the time of the foreclosure sale referred to immediately above and have continued to remain in possession since that sale; that plaintiff has made repeated demands upon the defendants for possession but they have refused to vacate; that plaintiff is being wrongfully deprived of possession; and that defendants have refused and still refuse to pay plaintiff for the use and occupancy of the premises.

Plaintiff concludes its pleading with a prayer that it be given possession of the property and damages for the defendants' alleged unlawful retention to be computed at the rate of $75 per month from the commencement of such purported unlawful retention.

In their answer, defendants deny all the material allegations of the complaint except that they admit that they have been in possession of the land described in plaintiff's complaint since and prior to 1964.

Plaintiff assigns as error that "the court erred in failing to sustain plaintiff's objection that the defendants were estopped to impeach the provisions of the deed of trust executed by them or to deny they had title at the time of execution of the said deed of trust." It is apparent from the record, p. 29, that this assignment of error refers to the deed of trust described above as plaintiff's Exhibit 3 — the second deed of trust executed by defendants in favor of Wise. This assignment of error is sustained.

Are the defendants, the grantors in the deed of trust which is designated as Plaintiff's Exhibit 3, estopped to deny anything in derogation of the rights which the deed of trust purports to convey? The answer is Yes. In *Edwards v. Meyer*, 100 Fla. 235, 130 So. 57, the syllabus by the Court under the first headnote in the Southern Reporter series says:

"A mortgagor is estopped from denying the validity of a mortgage on land executed by him as security for a loan upon the ground that he had no interest in or title to the land when he executed the mortgage, which mortgage is accepted by the lender on the mortgagor's representation that he was the owner of the land and in the belief that such representation was true."

The Court in its opinion said:

"But Edwards is estopped from denying the validity of the mortgage particularly as it was given and accepted through his suggestion and for his benefit. He accepted the proceeds of the mortgage, employed them for his own purposes, made no contest against the foreclosure, set up no defense against it, admitted the debt and execution of the mortgage, and neglected for more than two years to raise any question as to its validity, and, so far as the record discloses, remained in possession of the premises. (Citing authority.)

"Nor can the mortgagor plead his own want of title to the mortgaged premises in any case. (Citing authority.)"

To the same effect see 31 C.J.S., Estoppel, § 14.

Practically all the previous North Carolina cases dealing with the common source of title doctrine are collected by Winborne, J. (later C.J.) in *Stewart v. Cary*, 220 N.C. 214, 17 S.E. 2d 29, 144 A.L.R. 1287. The annotation in connection with this case in the volume of the American Law Reports just cited has since been superseded by a new annotation entitled "Common Source of Title Doctrine," 5 A.L.R. 3d 375. This annotation, at page 381, makes the following statement of the rule:

"The doctrine of common source of title is the well-established rule, in actions involving the title to or the right to possession of realty or an interest therein, that when the adverse parties claim title from the same source, it is not necessary for the plaintiff to trace the title back of the common source."

In a footnote to this statement the annotation says the following:

"The above statement of the rule appears to be the one most frequently used. Variants include (1) neither party can question the title of the common grantor, (2) plaintiff need not show title in such person, (3) a party is estopped from denying a title which is recognized in a deed under which he claims, and (4) ownership in the common source being admitted, it is presumed that his title is traced back to the sovereign."

The text of the annotation, at page 384, continues as follows:

"The view of many courts concerning the basis of the rule that title need not be traced back of the common source is typified by the statement in *Jennings v. Marston*, (1917) 121 Va. 79, 92 S.E. 821, 7 A.L.R. 855, that the rule rests upon the principle of estoppel, the defendant not being allowed the inconsistency of claiming both under and against the same title.

"Many other courts, while conceding that the rule is in the nature of and has the practical force and effect of an estoppel, take the view, as expressed in *Stewart v. Cary* [*supra*], that it is not strictly a rule of estoppel but is a rule of practice, founded in justice and convenience, which has become a rule of law, adopted by the courts for the purpose of aiding the administration of justice by dispensing with the necessity of requiring the plaintiff to prove the original grant and *mesne* conveyances, upon proof that the defendant claims under the same person."

At page 386 of the annotation *Harrison Mach. Works v. Bowers,* 200 Mo. 219, 98 S.W. 770 (1906) is paraphrased as follows:

"(A) necessary corollary of the common source of title rule is that in any case wherein a common source of title is agreed upon, or assumed, or shown to exist, and is relied on, irregularities in conveyances beyond the common source become weaknesses peculiar to both litigants and hence 'immaterial.'"

*Stewart v. Cary, supra,* at 221, says the following:

"While in an action to recover land the general rule is that plaintiff must rely upon the strength of his own title, and not upon the weakness of that of defendant, . . . there is in this State a well settled exception to this rule. It is that whenever in an action to recover land 'both parties claim title under the same person, neither of them can deny his right, and then, as between them, the elder is the better title and must prevail,' as aptly stated by Battle, J., in *Gilliam v. Bird,* 30 N.C. 280. This exception has been so often applied that it was termed an 'inflexible rule' as early as the decisions in *Gilliam v. Bird, supra,* and in *Christenbury v. King,* 85 N.C. 230. (Citing numerous authorities.)

\*  \*  \*

"(W)hile defendant can defend by showing that he has a better title in himself than that of the plaintiff, derived from

the person from whom they both claim or from some other person who had such better title, he is not at liberty to show a better title outstanding in a third person. (Citing authority.)"

It seems that the salient point which plaintiff wishes to establish with reference to this doctrine is that defendants' evidence tends to impeach or deny the title of the common grantor and also tends to show a good title outstanding in a third person which plaintiff would say is in derogation of the above stated rules.

Defendants have not attempted to go behind the original deed into the *feme* defendant and show a paramount independent chain of title outstanding in the hands of a third person.

> ". . . The rule that a defendant in ejectment cannot show title in a third person independent of the common source without connecting himself with it is limited to paramount titles older than the common source, and does not preclude the defendant from showing an outstanding title which accrued *subsequent* to that of the common source, and the defendant, *if not otherwise estopped,* may defeat the plaintiff's recovery by showing that the title of the common source is outstanding in a third person by virtue of a tax sale, or *by virtue of an encumbrance created by the common source prior to the plaintiff's title.*" (Italics supplied.) Annot., 5 A.L.R. 3d, *supra,* at 404.

Defendants' evidence did tend to show an outstanding title in a third party, to wit, Smith as trustee in the deed of trust executed by Wise in favor of plaintiff (Defendants' exhibit C). However, this was in no way violative of the common source doctrine. That doctrine only prevents a defendant who claims under a source common to plaintiff from showing a title outstanding in a third party which is paramount to the common source itself. Annot., 5 A.L.R. 3d, *supra.* That would be an attack on the source under which defendant claims and an assertion of a title in another person which is better than any title derived from the common source; and, hence, such a defense is precluded. In order to set up such a title superior to the common source the litigant must connect himself with it. But the doctrine does not prevent a defendant from showing that it or *a third party* has a better title than the plaintiff *under* the common source. Annot., 5 A.L.R. 3d, *supra.*

Does the "release deed" (Plaintiff's Exhibit 7) convey any interest whatsoever to defendants? Applying the rule that the intention of the parties to this "release deed" must be gotten from the deed in its entirety or, as the courts have expressed it, from its "four corners," *Edgerton v. Harrison,* 230 N.C. 158, 52 S.E. 2d 357,

it seems to us that the clear intention of the parties as expressed in this "release deed" was merely to release the *locus in quo* from the lien of a deed of trust which had already been foreclosed, as shown in Defendants' Exhibit B. We are fortified in this opinion by the following facts: (1) That when this "release deed" was executed there was a deed of trust upon the *locus in quo* from the defendants to trustee Smith in favor of Wise securing defendants' note in the amount of $6,960 which was executed on 1 May 1963 but was not recorded until 12 August 1964, and is Plaintiff's Exhibit 3; and (2) that Plaintiff's Exhibit 4 was an assignment by Wise to plaintiff, by which plaintiff acquired Wise's interest as *cesqui que trust* under the deed of trust specified as Plaintiff's Exhibit 3, which was executed 29 July 1963 prior to the execution of the "release deed," but not recorded until 10 September 1964 after the recordation of the "release deed." Plaintiff's Exhibit 6 was a trustee's deed or foreclosure deed from Cromartie, substitute trustee, to plaintiff *cesqui que trust* pursuant to a foreclosure sale made under the terms of the deed of trust specified above as Plaintiff's Exhibit 3. This foreclosure deed was executed 28 November 1964, which was after the execution of the "release deed." All of these transactions show that no conveyance of the fee through the "release deed" was intended by Wise and Smith and none was expected by defendants. As the grantors in the "release deed" held no further interest under the previously foreclosed deed of trust executed by defendants in favor of Wise (Defendants' Exhibit A), there was no subsisting lien under this foreclosed deed of trust which could be released by the grantors in the "release deed." Therefore, there is no after-acquired title in the defendants. The answer to the question is No.

Considering plaintiff's evidence in the light most favorable to it and giving it the benefit of every reasonable inference to be deduced therefrom, and considering defendants' evidence to the extent that it is not in conflict with plaintiff's evidence and tends to make clear or explain plaintiff's evidence, Supplement to 4 Strong's N. C. Index, Trial, § 21, and particularly defendants' admission in their answer that they have been in possession of the land described in the complaint and the *locus in quo* in controversy since and prior to 1964, it is our opinion that the judgment of compulsory nonsuit below was improvidently entered and it is reversed. There is no contention anywhere in the Record or anywhere in the briefs that the plaintiff fails to identify the land in the possession of defendants as the land covered by plaintiff's deeds.

We are dealing on this appeal with only documentary evidence which involves a highly complicated and confused series of conveyances, which are difficult to understand. No fraud is alleged in the

answer by defendants. It may be that when the case goes back for a new trial, defendants may pray the court for permission to amend their answer and to offer oral evidence. If they do so, that will be for consideration by the trial court.

The judgment of compulsory nonsuit below is

Reversed.