313 S.E.2d 461

**STATE of West Virginia**

v.

**Nolan SPENCE.**

No. 15967.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 1984.

Decided March 6, 1984.

Barry G. McOwen, McOwen, McOwen & McOwen, Huntington, for appellant.

Chauncey H. Browning, Atty. Gen., Janet F. Steele, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The appellant, Nolan Spence, was convicted by a jury of grand larceny and was sentenced to an indeterminate term of from one to five years in the State penitentiary by the Circuit Court of Wayne County. For the reasons set forth below, we reverse and we remand the case for a new trial.

The record indicates that on June 30, 1982, the appellant attended a party at a friend's house in Genoa, West Virginia. During the course of the evening two separate groups of people left the party. The first group, which did not include the appellant, left and later returned to the party. The second group, of which the appellant was one, left at approximately 2:30 a.m. and did not return.

Sometime during that night, a Gravely tractor was stolen from the yard of Taylor Ferguson. Soon after, the tractor was pur-

chased by Roy Clark, through his brother, Mike Clark. On July 2, 1982, following the report of the tractor theft, the State Police took statements from several persons who had attended the party, as well as Mike and Roy Clark. As a result of those statements, four persons were arrested. The appellant was one of the four. The other three persons were Charles Rowe, Dale Roseberry and Georgia Brooks. Each had given statements to the police admitting some degree of participation in the removal of the tractor and each implicated the appellant as the principal perpetrator of the theft. Mike and Roy Clark also implicated the appellant in their statements.

At trial the State's evidence was that the appellant left the party he was attending on June 30, 1982, with Charles Rowe, Georgia Brooks and Dale Roseberry. Rowe, who was on probation after pleading guilty to the crime, testified that he drove when the group left the party and that after a few minutes the appellant said that he had to use the bathroom. Rowe stopped the 1970 El Camino he was driving and the appellant got out. When he returned to the car he was pushing a Gravely tractor.

The appellant and Dale Roseberry placed the tractor in the back of the El Camino and the four drove to East Lynn where the appellant again got out. He went to Mike Clark's house and asked Clark to accompany him to see if Mike's brother, Roy, wanted to buy a tractor. Mike Clark returned to the vehicle with the appellant and the appellant instructed Charles Rowe to drive to Roy Clark's house. The appellant and Mike Clark were unable to arouse anyone in the house so they unloaded the tractor in the yard and the five returned to East Lynn.

Mike Clark testified that he returned to his house until noon when he then went to see his brother about buying the tractor. He told his brother, Roy, that the appellant informed him he had gotten the tractor from his father and that it was not stolen. Mike Clark further testified that he obtained $300 from his brother and that he gave the money to the appellant for the tractor a half an hour later.

The appellant took the stand in his own behalf and testified that he had gone to Mike Clark's house the morning after the party at Dale Roseberry's insistence, that he had not participated in or known about the theft of the tractor, and that Dale Roseberry was given money by Mike Clark.

Minnie Bourgeois and Ricky Roseberry both testified that they had been at the party and that the appellant had remained there until 4:00 a.m. They also testified that Roger Rowe, Charles Rowe and Dale Roseberry had left the party at approximately 10:00 p.m. and had not returned until 4:00 a.m. Two other defense witnesses placed Roger and Charles Rowe and Dale Roseberry together, without the appellant, first in a ditch at approximately 1:00 a.m. and then at Roy Clark's house at 3:00 a.m.

In his first assignment of error, the appellant contends that the trial court erred in refusing to allow the defense to interrogate its own witness on a prior inconsistent statement when surprised by unfavorable testimony at trial. During trial the defense called Roy Clark as one of its witnesses to further discredit the testimony of the State's major witness, Mike Clark, who had discredited himself by refuting in several material respects his earlier statement to the police. Roy Clark had originally been subpoenaed by the State but was not called to testify.

When the defense called Roy Clark, it relied on his statement made to the police in which he contradicted Mike Clark's testimony in two important respects. In that statement Clark stated that his brother Mike approached him about buying the tractor around 6:00 p.m. and he [Roy Clark] never actually saw the appellant in connection with the sale of the tractor. At trial Mike Clark testified that Roy had come to his house around noon, and that Roy was present when he gave the money to the appellant.

When defense counsel put Roy Clark on the stand and he changed his testimony from that he had given to the police, the defense attempted to question him about the prior statement. The trial judge sus-

tained the State's objection to such questioning.

 In syllabus point 4 of *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983), we stated:

"The credibility of a witness may be attacked by any party, including the party calling him and prior cases that expound a contrary principle are hereby overruled."

 The record in the case before us indicates that the defendant was surprised by the adverse testimony of a witness who appeared to have favorable testimony on several critical points in the State's case. Under the rule announced in *Kopa* the trial judge should have permitted the defense to impeach the witness even though he was called by the defense.

The appellant's second assignment of error is that the trial judge made improper remarks to the jury during the course of the trial and failed to instruct them of their right to maintain their conscientious convictions. The record indicates that the remarks made by the judge were designed to have the effect of expediting the trial. The appellant contends that the remarks had the effect of coercing a verdict. We agree.

 In *State v. Hobbs*, 168 W.Va. 13, 282 S.E.2d 258 (1981), we stated the general rule that whether a trial court's instructions constitute improper coercion of a verdict necessarily depends upon the facts and circumstances of the particular case. We further stated:

"The trial court must carefully instruct the jurors not to give up their conscientious convictions merely for the sake of achieving a verdict, and must scrupulously avoid expressing any opinion as to how the case should be decided. The trial court decision to so instruct the jury must neither encourage disagreement nor coerce agreement, *State v. Taft*, 144 W.Va. 704, 110 S.E.2d 727 (1959), but should foster the jury's fair and open-minded debate." 168 W.Va. at 37, 282 S.E.2d at 272.

 After a careful examination of the record in the instant case we conclude that the trial court's remarks amounted to improper coercion of the jury to reach a verdict within a time limit set by the court. Throughout the trial the court had made remarks such as, "we are going to take as much evidence as we can. If I hadn't been so rash as to promise a bunch of you ladies and gentlemen and I'll stick to my promise, you will be out of here by noon, tomorrow," and "I am not attempting to punish you. I don't want to hold you unduly but I need your help."

Later in the trial after the jury had deliberated for less than an hour, the court called them from their deliberations and inquired of their progress. When the foreman replied that "no substantial progress" had been made, the court stated:

"Now the Court is not ordering you, but you have to reach a verdict. I am merely telling you what is contemplated in the eyes of the law, if it is possible to do it.

"I am going to give you ladies and gentlemen a few more minutes to see if you can resolve your differences by discussing them and if you can arrive at a verdict."

We conclude that the court's remarks, when considered in their entirety throughout the course of the trial, had the effect of improperly coercing the jury to reach a verdict, and to reach it quickly.

Accordingly, the judgment of the Circuit Court of Wayne County is reversed and the case is remanded for a new trial.

Reversed and remanded.