# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia**
**Plaintiff below, Respondent**

vs)  **No. 14-0016** (Cabell County 93-F-50)

**Charles Franklin Plymail**
**Defendant below, Petitioner**

**FILED**

November 20, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Charles Franklin Plymail, pro se,[1] appeals his August 20, 1993, conviction for second degree sexual assault and subsequent sentencing, under West Virginia Code § 61-11-19, to a term of life imprisonment. Respondent State of West Virginia ("State"), by counsel Benjamin F. Yancey, III, filed a response in support of the circuit court's order. Petitioner filed a reply and a supplemental appendix.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 12, 1992, petitioner met K.Y. at a bar near the campus of Marshall University.[2]  At the end of the evening, K.Y. offered petitioner a ride from the bar to his nearby apartment. K.Y. drove petitioner to his apartment and entered the apartment with petitioner. While there, petitioner and K.Y. twice engaged in consensual sexual intercourse. After these consensual sexual encounters, K.Y. told petitioner she needed to go home. Petitioner asked K.Y. to stay, but she insisted on leaving. As K.Y. began picking up her clothing, petitioner came toward her and again asked her not to leave. In response, K.Y. backed away from petitioner.

Petitioner then struck K.Y. in the face, grabbed her by her hair, and pulled her face toward his penis. With K.Y. attempting to resist, petitioner forced K.Y. to perform oral sex on him. Following this sex act, petitioner dragged K.Y. back to his bedroom. Once in the bedroom,

---

[1]At the time of the filing of his petition for appeal, petitioner was represented by counsel, Steve Cook.

[2]Prior to their chance meeting on September 12, 1992, petitioner was not acquainted with K.Y.

petitioner pushed K.Y. down on the bed, then made a move toward her. K.Y. got up from the bed and ran toward the door of the apartment. As she reached the door of the apartment, she was tackled by petitioner. After a struggle, she was able to free herself and run naked from the apartment. Once outside, K.Y. began screaming and banging on petitioner's neighbor's doors. Petitioner (also naked) then came from his apartment and grabbed her by her hair. K.Y. began hitting and kicking at petitioner. Eventually, her cries for help were overheard by petitioner's downstairs neighbor, who took K.Y. into her apartment and called police.[3]

K.Y. was transported to the hospital for examination. Petitioner was placed under arrest and given a *Miranda*[4] warning. K.Y. told law enforcement officers that she had engaged in consensual sex with petitioner, but when she tried to leave petitioner's apartment, he insisted she stay. The argument between petitioner and K.Y. escalated and petitioner slapped K.Y., grabbed her hair and allegedly forced her to perform oral sex upon him. K.Y. refused to allow the preparation of a rape kit and was, initially, unwilling to pursue a sexual assault charge against petitioner.[5]

On September 18, 1992, K.Y. had a change of heart and decided to pursue charges against petitioner for sexual assault. Petitioner was again arrested. Unable to post bond, petitioner remained incarcerated while awaiting trial. On January 7, 1993, petitioner was indicted by the Cabell County Grand Jury on six felony charges.[6] Petitioner's trial was set for August 18, 1993. On August 4, 1993, the State advised petitioner that it would proceed to trial on count I of the indictment only (the only criminal charge relating to the assault of K.Y.), as it was still awaiting laboratory results necessary to proceed on the trial of counts II-VI of the indictment.

---

[3]Petitioner disputes a majority of the allegations made by K.Y. Petitioner, in a written statement provided to police, acknowledged engaging in consensual sexual intercourse with K.Y. at his residence on the evening in question. However, petitioner contends that during sexual intercourse, K.Y. bit him on the chest. In response to the bite, petitioner struck K.Y. across the face. K.Y. then ran from petitioner's residence, and called for help. Petitioner alleged that he ran after K.Y. and told her to get her clothes and leave his apartment. K.Y. cursed at petitioner and allegedly ran to get the assistance of petitioner's neighbors.

[4]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

[5]While K.Y. refused to submit to a rape kit, her refusal came with the understanding that the information gathered from the rape kit would not help in prosecuting petitioner, as before he raped her, there had been consensual oral and vaginal sex between petitioner and K.Y.

[6]Count I of the indictment charged petitioner with the second degree sexual assault of K.Y. Counts II though V charged petitioner with the unrelated August 19, 1992, burglary of the home of T.S., two counts of the first degree sexual assault of T.S., and the first degree sexual abuse of T.S. Count VI charged petitioner with the unrelated maliciously wounding K.L. (T.S.'s roommate).

2

Petitioner's trial began on Wednesday, August 18, 1993, and testimony concluded the following day. After instructions and closing arguments, at 3:36 p.m., the jury began deliberations. At 6:08 p.m., after sending the court a note, the jury returned to the courtroom and informed the court and the parties that they were hung, at a vote of 6-4-2. The court addressed the jurors as follows:

> Okay. Do any of the jury – just hold up your hand if you feel this way. Do any of you feel like continued deliberations would help you in arriving at a unanimous verdict in this case? Is there anybody who feels like continued deliberations may help? Somebody is saying yes. One person. Two people. Three. Let's get this straight. Just don't say anything. Do the rest of you not feel that – you know, I have given you instructions and tell you not to use pride or stubbornness and to consider all of the evidence and change your mind if you feel like you are wrong.
>       . . . .
>
> Let me have you all go back in and see – let you discuss it again and see whether or not you all feel as a group that you can continue to deliberate and possibly arrive at a verdict and when you have agreed on something, knock on the door – ring the bell and we will bring you back out here again. Because we talked about this in orientation, you recall. But the court has no way to force you all into making a decision. That's improper for me to do so.
>       . . . .
>
> Just go back in and discuss it a little bit and then buzz me and we will bring you back out.

After this exchange, at 6:16 p.m., the jury returned to the jury room. At 6:40 p.m., the court instructed the bailiff to bring the jury back into the courtroom. The bailiff went to the jury room, knocked on the door, and was advised by the jurors that they wanted to be left alone because they were working. Thereafter, at 7:00 p.m., the jury returned to the courtroom and announced they had reached a unanimous verdict. The jury found petitioner guilty of second-degree sexual assault.

On August 30, 1993, the State filed recidivist information against petitioner alleging that he had been convicted of a felony on at least two prior occasions.[7] The information stated that a copy of the indictment and conviction order related to petitioner's 1984 burglary conviction were

---

[7]The information stated that petitioner had been convicted of three prior felonies, including a 1989 conviction for third-degree sexual assault in West Virginia; a 1984 conviction for armed robbery, and subsequent conviction for escape, in Georgia. While the escape conviction was referenced in the information, it was not used as one of the triggering enhancements during the recidivist proceeding.

attached to the information; however, the copy of the information that was served upon petitioner did not include a copy of the indictment and conviction order for the burglary charge.[8]

On September 9, 1993, petitioner again appeared before the circuit court, at which time the court, at petitioner's request, postponed his arraignment on the recidivist information.[9] On February 14, 1994, petitioner was arraigned on the information, and admitted to his two prior felony convictions (armed robbery and sexual assault). On February 22, 1994, petitioner was sentenced to life in prison, with parole eligibility after serving 15 years.

On November 13, 2013, in order to preserve petitioner's appeal rights, the trial court entered an order resentencing petitioner. It is from the November 13, 2013, order that petitioner now appeals. On appeal, petitioner raises seven assignments of error involving various legal principles.

Generally, we have held that,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). Other relevant standards of review will be set forth in the discussion of each assignment of error.

In his first assignment of error, petitioner argues that the extraordinary delay in his right to appeal is cause for his immediate release from prison, along with an injunction to spare him from further prosecution. It is undisputed that petitioner was convicted of the charge of second-degree sexual assault on August 19, 1993, and was sentenced on February 14, 1994, to a term of life imprisonment. However, the appeal of his conviction was not filed until January 8, 2014.

In *Rhodes v. Leverette*, 160 W.Va. 781, 786, 239 S.E.2d 136, 140 (1977), we recognized the right to appeal a criminal conviction, and ruled the denial of the right of appeal constitutes a violation of due process which renders the sentence imposed by reason of the conviction void and unenforceable. We further held, in *Carter v. Bordenkircher*, 159 W.Va. 717, 226 S.E.2d 711 (1976), that, except in cases of extraordinary dereliction on the part of the State, the appropriate remedy for denial of a timely appeal was not unconditional release, but such remedial steps as will permit the effective prosecution of the appeal.

---

[8]Rather, the copy of the information served upon petitioner contained two copies of the conviction order related to the escape charge.

[9]Petitioner requested additional time to review the information and its attachments, before being called upon to answer any of the charges therein.

4

In syllabus point six of *Leverette,* we identified the factors to be considered in determining whether there has been extraordinary dereliction, which include:

> the clarity and diligence with which the relator has moved to assert his right of appeal; the length of time that has been served on the underlying sentence measured against the time remaining to be served; whether prior writs have been filed or granted involving the right of appeal; and the related question of whether resentencing has occurred in order to extend the appeal period. While extraordinary dereliction on the part of the State does not require a showing of malice or ill will, certainly if such is shown it would be a significant factor.

In applying the above factors to the facts in the case now before us, we conclude that the State has not been so extraordinarily derelict as to justify the setting aside of petitioner's conviction. Petitioner argues that, through no fault of his own, his appeal has taken more than twenty years to perfect. He contends that he has made constant, repeated attempts at appeal but he has been denied his right to appeal for no justifiable reason. Petitioner believes he should be commended for what he has effectively done to preserve and protect his appellate rights over the years without the assistance of the State, the court system, or his appointed counsel. He has filed, pro se, a petition for mandamus relief requesting this Court to direct the appointment of counsel.[10] Petitioner argues that he has steadfastly moved to protect his appellate rights, and has already served more time than he would have served on the underlying sentence (absent the life sentence recidivist enhancement, which was wrongfully applied).

The State argues that the delay in petitioner's appeal does not warrant his immediate release from prison, and disputes petitioner's assertion that none of the twenty year delay of his appeal is attributable to him, or that he did not receive assistance from the State, the court system or his numerous appointed counsel (including George Beter, Nancy Sheets, Harry Hager, Neil Bouchillon, Steve Bragg, Nicholas Mayo, Jason Goad, and Steve Cook). Each of these attorneys, upon their own initiative, or at the insistence of petitioner, withdrew as petitioner's appellate counsel. In the State's view, the withdrawal of these attorneys was due, in large part, to petitioner's accusatory, abrasive, and belligerent attitude, which is ever present in the caustic letters that petitioner wrote to these attorneys. Petitioner has found a problem with every attorney

---

[10]Petitioner has filed, before this Court, two previous motions - a motion for extension of time to file a notice of appeal and a petition for writ of mandamus. His motion for extension of time to file notice of appeal was granted, and subsequently an appeal was filed within the enlarged time frame. His writ of mandamus, filed August 22, 2013, related to his request that this Court compel the circuit judge to rule upon petitioner's motion for resentencing. On September 28, 2012, petitioner's then counsel filed, before the circuit judge, a motion for resentencing for the purpose of perfecting an appeal. Petitioner's writ of mandamus, filed pro se, was dismissed, as moot, by order of this Court dated January 28, 2014, as the trial court had entered a resentencing order for petitioner on September 20, 2013.

5

that the court has appointed for him, be it appellate or trial counsel.[11] We agree. While a nearly twenty-year delay of the filing of petitioner's appeal is extraordinarily long, such delay does not automatically entitle petitioner to unconditional release from prison. In syllabus point four of *State v. Merritt*, 183 W.Va. 601, 396 S.E.2d 871, (1990), we reasoned that

> [o]nce a criminal defendant's appeal has been heard and found lacking in merit, notwithstanding possible due process violations arising from delays in transcribing the trial transcript or counsel's dilatory action in perfecting the appeal, the defendant is not entitled to an unconditional release.

In the case at hand, there is no merit to petitioner's appeal. As such, per *Merritt*, there is no prejudice to petitioner for delay in the filing of his appeal.

In his second assignment of error, petitioner contends that the circuit court committed plain and reversible error in the comments it made to the jury during deliberations, and in imposing a "limitation" on the time frame for completing the trial and jury deliberations, which he argues coerced the jurors into agreeing upon a verdict.

Petitioner alleges that the trial court interfered with the length of trial and the amount of time jurors had to deliberate, and directed jurors to reach a verdict in an improper way. In syllabus point two of *State v. Spence*, 173 W.Va. 184, 313 S.E.2d 461 (1984), this Court held that "[w]hether a trial court's instructions constitute improper coercion of a verdict necessarily depends upon the facts and circumstances of the particular case and cannot be determined by any general or definite rule." (Citations omitted.)

In *Spence*, this Court found sufficient coercion in regard to the totality of the circumstances. In the instant case, on the day of jury selection (Wednesday), two prospective jurors indicated they had a prior commitment on Friday, and would not be available for trial, if the case should last longer than two days. The jurors remained on the jury, thus beginning, petitioner argues, the process of limiting the length of the trial. The circuit court advised the jury and counsel that the case was going to take two days to try. The trial court reminded jurors several times of the desire to get the case concluded in two days. Immediately prior to the commencement of jury deliberations, the circuit court reminded jurors to "get it finished" that evening, and went on to tell the jurors who had scheduling conflicts about the possibility of overnight sequestration.

Respondent argues that the circuit court did not commit plain and/or reversible error in its comments to the jury at any time during petitioner's trial, and did not coerce the jury into agreeing upon a verdict. The circuit court's expression to the jury of its desire to finish the trial in two days was couched in a conversational and polite tone, which did not coerce the jury into prematurely convicting petitioner. Nor did the trial judge rush the jury into convicting petitioner by commenting to it that he would hate to have to put them in jail overnight to make sure that

---

[11]We further note that within the time frame of the delay asserted by petitioner, the record reveals that, due to a significant illness, petitioner was unavailable for trial for a period of several years.

they would be there the next day. The comments made by the circuit court, in this regard, were not threats, but were clearly said in jest. Further, the court's comments to the jury and instructions, upon learning that the jury was at an impasse, did not coerce the jury into convicting petitioner. In fact, at the moment of these instructions, the court specifically told the jury that it could not force them into making a decision, as it would be improper to do so.

Petitioner contends that the trial court further erred by asking jurors, after jurors advised the that court they were deadlocked at "six-four-two," who felt that continued deliberations might result in an agreement, with only three jurors indicating yes. Petitioner argues that had the trial court not coerced the jury, and if not for other errors enunciated herein, petitioner would not have been convicted.

In syllabus point two of *State v. Johnson*, 168 W.Va. 45, 282 S.E.2d 609 (1981), we held that

> [w]here a jury has reported that it is unable to agree and the trial court addresses the jury urging a verdict, but does not use language the effect of which would be to cause the minority to yield its views for the purpose of reaching a verdict, the trial court's remarks will not constitute reversible error.

Further, in *State v. Hobbs*, 168 W.Va. 13, 37, 282 S.E.2d 258, 272 (1981), we ruled that "it is within the trial court's discretion to urge an earnest effort [for the jury] to agree, so long as jurors are free to act without any form of coercion by the trial court."

On appeal, petitioner asserts that the court committed error in giving the above instructions to the deadlocked jury and making the comments described above, as the same created a coercive atmosphere, without which the jury would not have convicted him. Based upon our review of the record, at no time during the court's comments and instructions to the jury did petitioner raise any objection as to the offending comments and instructions. Thus, petitioner's complaints about the same, in this appeal, are waived. In *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996), we found that in order "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect."

Petitioner contends that to the extent that objections to these errors were not made at trial, the same clearly fall within the plain error doctrine. *See State v. Miller* 194 W.Va. 3, 459 S.E.2d 114 (1995). Respondent argues that petitioner's counsel's failure to object did not amount to plain error. We agree. As this Court noted in *State v. Whittaker*, 221 W.Va. 117, 131 n.18, 650 S.E.2d 216, 230 n. 18 (2007)

> [t]he "raise or waive" rule is not absolute where, in extraordinary circumstances, the failure to object constitutes plain error. "The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." . . . "Under plain error, appellate courts will notice unpreserved errors in the most egregious circumstances. Even then, errors not

7

seasonably brought to the attention of the trial court will justify appellate intervention only where substantial rights are affected.

In syllabus point eight of *State v. Thompson*, 220 W.Va. 398, 647 S.E.2d 834 (2004), we found that

> [a]n unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

(Citation omitted.)

Next, petitioner argues the trial court lacked jurisdiction to use the recidivist statute to enhance his conviction, because he was not arraigned on said enhancement in the same term of court as the conviction, as required by statute.

West Virginia Code § 61-11-19 provides that

> [i]t shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impaneled to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find that he is the same, or after being duly cautioned if he acknowledged in open court that he is the same person, the court shall sentence him to such further confinement as is prescribed by section eighteen [§ 61-11-18] of this article on a second or third conviction as the case may be.

In the instant case, the jury returned a guilty verdict against petitioner on August 19, 1993. That same day, the State indicated its intent to have petitioner sentenced as a habitual criminal. On August 30, 1993, an information alleging prior felony convictions was filed. On September 9, 1993, petitioner was brought before the trial court. At the September 9, 1993,

8

hearing, petitioner asked the trial court for time to review the information and recidivist statute, so that he could properly admit or deny that the was the person named in the information.

During the September 9, 1993, hearing, the following exchange took place between the court and petitioner:

PETITIONER: Your Honor, I – as I said, I was only served with this thing a 4 o'clock Tuesday. I believe there's some case law that indicates I should have time. The whole purpose of having this written is so that it can be presented to me and I can have some time to review the facts in here and decide . . . what I should do.

THE COURT: I am willing to give you that time so long as we don't have any claim of a denial of a speedy trial. As I recall the law, it doesn't require that you have your trial within the same Term of Court, in which we are right at the end of the Term. We have got a week left.

In support of his position, petitioner cites *State v. Cavallaro*, 210 W.Va. 237, 557 S.E.2d 291 (2001) and *Holcomb v. Ballard* 232 W.Va. 253, 752 S.E.2d 284 (2013). In *Cavallaro*, the trial court found a recidivist life imprisonment sentenced void and unenforceable because the State failed to comply with the requirements of West Virginia Code § 61-11-19, insofar as defendant was not arraigned on the information during the term of court in which he was convicted of the principal offense. The *Holcomb* Court ruled in syllabus point one, in part, that "[t]he procedural recidivist requirements of W.Va. Code § 61-11-19 (1943) (Repl. Vol. 2010) are mandatory, jurisdictional, and not subject to harmless error analysis." The *Holcomb* Court further noted that habitual criminal proceedings providing for enhanced or additional punishment on proof of one or more prior convictions are wholly statutory. In such proceedings, a court has no inherent or common law power or jurisdiction. Being in derogation of the common law, such statutes are generally held to require strict constructions in favor of the prisoner. Hence, petitioner contends that the law is well settled that the trial court lacked jurisdiction to enhance petitioner's sentence to a life sentence under the habitual criminal statutes.

The State argues that the circuit court's postponement of the arraignment of petitioner on the recidivist information was brought about by petitioner's request. Therefore, petitioner's assertion that his life sentence is invalid, as the court failed to arraign him on the information during the same term of court that he was convicted of the underlying crime, is disingenuous and tantamount to invited error. We agree.

We explained the concept of "invited error" in *State v. Crabtree*, 198 W.Va. 620, 627 482 S.E.2d 605, 612 (1996):

"Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit

from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for inducement of error. Having induced an error, a party in a normal case may not at a later stage of trial use the error to set aside its immediate and adverse consequences.

It is clear, from our review of the record, that petitioner requested a delay in his arraignment on the recidivist information. The circuit judge granted petitioner's request for postponement and stated "I am willing to give you that time so long as we don't have any claim of a denial of a speedy trial." Thus, we find that any delay with respect to petitioner's arraignment on the recidivist information was brought about at the request of petitioner. Consequently, based upon our holding in *Crabtree*, we find no error.

In his fourth assignment of error, petitioner contends that he was misled into waiving his right to testify. Petitioner alleges that the State threatened to cross-examine him about his prior convictions and about the charges contained in Counts II-VI of the indictment. Petitioner contends that the State failed to articulate a legitimate reason for introducing misconduct evidence during cross-examination of petitioner, and did not conduct a 404(b) in camera hearing. Petitioner argues his trial counsel specifically requested a ruling prohibiting the introduction of propensity evidence at petitioner's trial.[12] By failing to grant trial counsel's motion, petitioner alleges that the trial court committed reversible error.

Our examination of the record in the instant case reveals that at the conclusion of the first day of trial, the prosecutor announced that T.S. (the alleged victim of Counts II and V of the indictment) was present in the courtroom and that, if petitioner chose to testify, the State would inquire of him if he knew T.S. The trial court indicated the prosecutor might be entitled to do so, depending on what the petitioner said when he testified. However, the trial court avoided any reference to character or reputation and failed to convey that the threatened cross-examination would only occur if petitioner placed his character or reputation into issue. Petitioner's trial counsel's objections were denied. Petitioner argues that threatening to introduce evidence from counts II-VI served to mislead and intimidate his decision to testify. Petitioner cites *State v.*

---

[12]Petitioner does not provide this court with a citation of where petitioner's trial counsel's request is located in the record. We direct petitioner to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, in pertinent part, which requires that a petitioner's brief

> must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

10

*Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979), in which this Court ruled that in the trial of a criminal case, a defendant "who elects to testify may have his credibility impeached by showing prior convictions of perjury of false swearing, but it is impermissible to impeach his credibility through any other prior convictions." Given the holding in *Green*, petitioner argues that he should be granted a new trial.

Respondent contends that the trial court and petitioner's trial counsel did not mislead petitioner into waiving his right to testify.[13] Petitioner has failed to establish that the court made any grossly erroneous misstatements concerning the possible admissibility of petitioner's prior convictions, charges, and wrongful acts during cross-examination. As explained by the court, whether these matters were admissible or not would depend on what petitioner testified to during direct examination. The same can be said of petitioner's trial counsel's advice and statements to petitioner concerning the dangers of him taking the stand. The overall "tenor" of these statements was to help petitioner refrain from, during cross-examination, "opening the door" to permit these matters to come into evidence.

During the trial, outside of the presence of the jury, petitioner made a verbal assertion to the court that, after consulting with counsel, he decided not to take the stand. In response to petitioner's decision to exercise his right to remain silent, the circuit court stated:

> [o]f course, you got the statements into the jury two times he is not guilty, one he told the jury he was not guilty and one in the statement, and I don't – if I were trying the case I don't know how you could not much better than that.[14] That is your decision to make. That way you don't subject yourself to any questions.

In *Dietz v. Legursky*, 188 W.Va. 526, 530, 425 S.E.2d 202, 206 (1992), we held that "[a] grossly erroneous mis-statement by counsel or court about the areas of conduct or criminal record that a defendant can be cross-examined about it if he elects to testify in his belief, which mis-statement may be reasonably considered to have deterred him from testifying, is reversible

---

[13] Respondent notes that on the first day of trial, the circuit court ruled that the State was prevented from introducing any of the above convictions, charges, and wrongful acts in its case-in-chief. The circuit court ruled that petitioner's prior armed robbery conviction would not come in at any time. On the other priors coming in during cross-examination, the court ruled that

> [w]ell, of course, a lot of it depends on what he testifies to, if he does take the stand. It may be that it's not admissible according to his testimony or it may be. I don't know what he's going to say. If he doesn't take the stand, of course, it's not coming in at all.

[14]The statements referenced herein included petitioner's "statement" of not guilty offered at the beginning of trial, and petitioner's written statement made after his arrest. In his written statement, petitioner denied raping K.Y. At trial, this statement was read to the jury without any objection from the prosecution, and without petitioner's being cross-examined about the statement.

11

error." Here, petitioner failed to show that the court made any grossly erroneous misstatements concerning the possible admissibility of petitioner's prior convictions, charges, and wrongful acts during cross-examination. The same can be said of petitioner's trial counsel's advice and statements to him concerning the dangers of him taking the stand. As such, we find no error.

Next, petitioner argues that the circuit court erred in permitting the prosecutor to use inflammatory language, state facts not in evidence, appeal to local and general prejudices, and discuss and attack petitioner's pre-trial silence, failure to testify at trial, and failure to present witnesses during his closing argument. In syllabus point three, in part, of *State v. Kendall*, 219 W.Va. 686, 639 S.E.2d 778 (2006), we identified four facts to be taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

(Citation omitted.)

We have held that a judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice. *See* Syl. Pt. 5, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982).

In syllabus point two of *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978), we held that

> [g]reat latitude is allowed counsel in argument of cases, but counsel must keep within the evidence, not make statements calculated to inflame, prejudice or mislead the jury, nor permit or encourage witnesses to make remarks which would have a tendency to inflame, prejudice or mislead the jury.

Despite petitioner's arguments regarding the comments of the prosecutor, petitioner's counsel did not object to any of the prosecutor's remarks at the time the statements were given. In not making any objection, the petitioner's complaints about these remarks are now waived. *See Cooper*, 196 W.Va. at 216, 470 S.E.2d at 170. Respondent further disputes that the prosecutor's comments amounted to plain error as these comments did not cause a "miscarriage of justice" and further did not seriously affect the fairness, integrity, or public reputation of petitioner's trial.

In his sixth assignment of error, petitioner alleges that the circuit court failed to conduct a proper in camera hearing and make a definitive ruling as to respondent's proffered evidence under Rule 404(b) of the West Virginia Rules of Evidence. In syllabus point two, in part, of *State v McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), we held, in part, that

12

[w]here an offer of evidence is made under rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered . . . .

Further, in *State v. LaRock,* 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996), we held that the standard of review

for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

We also note that "[t]his Court reviews disputed evidence in the light most favorable to its proponent, [in this case, the State,] maximizing its probative value and minimizing its prejudicial effects. *Id*., 196 W.Va. at 312, 470 S.E.2d at 631; s*ee also McGinnis*, 193 W.Va. at 159, 455 S.E.2d at 528. Petitioner argues that the trial court failed to provide a Rule 404(b) in camera hearing regarding the admission of Rule 404(b) evidence regarding petitioner's prior bad acts, and alleges that the prosecutor threatened to utilize petitioner's prior convictions against him, which impacted petitioner's right to testify. Petitioner alleges that had he been afforded such a hearing, he would have testified at trial, which he previously indicated on the record was his desire to do so.

Respondent counters that under the circumstances of this case, the trial court did not commit error by failing to conduct a Rule 404(b) in camera hearing, or in not issuing a definitive ruling on the admissibility of petitioner's prior convictions, charges, and wrongful acts. No Rule 404(b) hearing was conducted – and thus, no ruling issued – because petitioner never testified. Because petitioner did not testify, there was no need for any such hearing or definitive ruling. We note that the circuit court advised petitioner that no information or evidence of his prior bad acts would come in if he chose not to testify at trial. As addressed above, petitioner knowingly waived his right to testify at trial. Accordingly, it was not necessary for the circuit court to make

13

any additional findings regarding the admissibility of the Rule 404(b) evidence at issue herein. Based on our review of record, we find that the circuit court did not abuse its discretion in its handling of the Rule 404(b) evidence related to petitioner's prior bad acts.

Finally, petitioner argues that the trial court's cumulative errors denied his constitutional right to a fair trial, and therefore, he was therefore entitled to immediate unconditional discharge from incarceration. *See* Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972) (holding that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.") Because we find no error in this case, the cumulative error doctrine has no application. As this Court reasoned in *State v. Knuckles*, 196 W.Va. 416, 426, 473 S.E.2d 131, 141 (1996) "[c]umulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Allen H. Loughry II


**DISSENTING AND WRITING SEPERATELY**:

Justice Menis E. Ketchum
Justice Robin Jean Davis


Ketchum, Justice; joined by Davis, Justice, dissenting:

I would reverse the conviction because the judge placed a "time limitation" for completing the evidence and jury deliberations. This had a coercive effect on the jury,

During voir dire two jurors told the court they were leaving for vacation and could not be there if the trial lasted longer than two days. Nevertheless, they were kept on the jury venire.

14

At the end of the second day the case went to the jury. The judge told the jurors "to get it finished", told the jurors who had a conflict the next day the possibility of overnight sequestration to secure their attendance, and he would hate to put them in jail overnight.

The jury began deliberations at 3:36 p.m. At 6:08 pm the jury advised the judge they were hung 6-4-2. The court talked with the jury and sent them back for deliberations at 6:16 p.m. At 7:00 p.m. the jury arrived at a unanimous guilty verdict.

The court's statement that he may sequester or put jurors in jail to secure their attendance for the next day certainly caused jurors to yield their views for the purpose of reaching a verdict. It only took the jury 49 minutes to resolve a 6-4-2 split after being sent back to their jury room.

There is no doubt that the judge's rush to conclude the trial constituted improper jury coercion. *See, State v. Spence*, 173 W.Va. 184, 313 S.E.2d 461 (1984).

I am authorized to state that JUSTICE DAVIS joins me in this dissenting opinion.